

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-14-00046-CR

LEAVELLE FRANKLIN, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 102nd District Court
Bowie County, Texas
Trial Court No. 13F1053-102

Before Morriss, C.J., Moseley and Carter,* JJ.
Opinion by Justice Moseley

---

*Jack Carter, Justice, Retired, Sitting by Assignment

O P I N I O N

A jury convicted Leavelle Franklin of three counts of aggravated sexual assault of his seven-year-old daughter, Tasha Johnson (pseudonym), with two previous felony convictions.[1] Franklin pled true to the State's habitual-offender enhancement paragraph and was handed consecutive sentences of life imprisonment on each count. Franklin appeals his conviction on the grounds that the trial court erred (1) in admitting a Sexual Assault Nurse Examiner's (SANE) reports over his hearsay objection, (2) in limiting cross-examination of the forensic interviewer, which was designed to uncover inconsistencies in the victims' statements, (3) in exempting the Child Advocacy Center's (CAC) clinical director from the witness sequestration rule, and (4) by overruling his objection to comments made during the State's closing argument.

Here, because the SANE's reports constituted statements made for the purposes of medical diagnosis, we find that the trial court did not abuse its discretion in finding them admissible. We find that Franklin failed to preserve his second point of error related to the limitation of cross-examination. We also find harmless error (1) in exempting a witness from the witness sequestration rule and (2) in overruling Franklin's objection to the State's improper jury argument. Consequently, we affirm the trial court's judgment.

---

[1]In a separate indictment, the State alleged that Franklin also committed three counts of aggravated sexual assault of his six-year-old daughter, Barbara Johnson (pseudonym), with two previous felony convictions. The State joined both indictments in a single proceeding, which resulted in a total of six convictions and six sentences of life imprisonment. The trial court's sentences for the offenses committed against Tasha run concurrently with Franklin's sentences for the offenses committed against Barbara. In our cause number 06-14-00047-CR, Franklin appeals his three convictions for aggravated sexual assault against Barbara by raising the same grounds that are presented in this appeal.

## I.     The Evidence at Trial

At trial, Tasha's and Barbara's mother, Conesha, testified that she became aware that Franklin was abusing the girls after they stayed with him at his trailer during Easter weekend of 2013. According to Conesha, Franklin normally engaged in a cordial visit with her when returning the children to her possession. Thus, Conesha found it odd that after the Easter visitation ended on Sunday, March 31, 2013, Franklin simply dropped the children off at the doorstep, and the girls proceeded straight upstairs without greeting her. Unsure of the reason for the children's mood, Conesha did not pry until Tasha informed her that she had found blood on a tissue after using the restroom. On hearing Tasha's statement, Conesha became worried that Tasha might have been molested and asked her if Franklin had touched her inappropriately. According to Conesha, Tasha put her head down, acted as if she was scared, and shook her head no. Conesha, who sensed that Franklin "put like fear in [Tasha's] heart," decided not to push the issue.

Later that night, Conesha's longtime live-in boyfriend, Bobby Wells, returned to the house to find Conesha pacing. Conesha informed Wells of the "bad vibe" from the children's behavior and asked him to talk to the girls to see if they would say anything to him. Wells agreed to speak to the girls, who were asleep, after he returned from work on the following day. However, Conesha testified that before Wells had the chance to speak to the girls, Tasha approached her and told her that Franklin had touched her between the legs. When Wells returned home from work and received word of Tasha's statement, Wells decided to speak to the children individually.

3

When Wells asked Barbara what was wrong, she told him "daddy was being bad to us." Believing it possible that the girls had merely been disciplined, Wells asked whether they had been spanked. Both girls denied being spanked, but became very upset and started to cry. According to Wells, Barbara said that Franklin informed both girls that they were his girlfriends, told them to be quiet, "pulled his pants down and then pulled theirs down," and was "messing with [them]." Wells testified that Barbara told him that Franklin had made her put her mouth "on his thing." Pointing to her private, Barbara also said that Franklin "got on top of her and started hunching." According to Wells, Tasha made similar statements. She said that Franklin "put his hand down between her legs . . . and was trying to put his finger up in her, and then . . . he put her on her back[,] . . . got on top of her[,] . . . [and] told her that she was his new girlfriend." Wells became angry and left the house to cool down.

According to Conesha, while Wells was away, Tasha informed her that Franklin had put his penis in her mouth. When Wells returned, Wells and Conesha decided to call the police. On Wednesday, April 3, 2013, after the girls spoke to the responding officer, they were taken to the emergency room. At the hospital, Conesha spoke with a nurse who explained that it would be difficult to collect evidence because several days had passed since the alleged abuse. As a result, Conesha decided against subjecting the children to a sexual-assault examination. Instead, the children were taken to the Texarkana CAC on April 4, 2013, to undergo a forensic interview.

Melanie Hughes, a forensic interviewer at the CAC, testified that she interviewed Tasha and Barbara after she was assured that they knew the difference between a truth and a lie. While Hughes did not testify about specific statements made by the children during the interview, her

4

testimony suggested that the children had experienced sexual abuse.  Because she did not observe any signs of coaching, Hughes testified that in her opinion, the girls appeared to be recounting events that they actually experienced.

It was not until April 18, 2013, that the children were taken to see outcry witness Kathy Lach, a SANE, for a medical examination conducted at the CAC.  Lach testified that (1) she met with Tasha and Barbara, (2) she explained who she was and why she was there, and (3) she was assured that the children understood that the examination was for the purposes of medical diagnosis and treatment.  Lach told the jury that she wrote the children's historical account verbatim, conducted a detailed genital examination of each child, and authored a report containing the statements made by each child.  Over Franklin's hearsay objection, the trial court admitted the reports and allowed Lach to read their contents.  Lach's report of Tasha's account stated,

> I wiped my bottom to keep me clean, and my bottom was bleeding.  My daddy put his middle part up in my butt.  He has done it a bunch of times.  He did it when I was six and seven.  He says don't tell anybody I did it, or he won't buy us anything.  But I had to tell my mama.  He put his middle part in my mouth and milk came out of it.

According to Lach's report, Barbara's account stated, "In the car, dad would reach back and touch our privacy. . . . He put his privacy in my mouth -- he put his privacy in my privacy, and he put his privacy in my behind.  I would tell him no, and he'd put his privacy in my mouth."  Without objection, Lach testified that during her interview, Tasha and Barbara both said that Franklin penetrated their mouths, vaginas, and anuses.  Lach testified that her examination did

5

not reveal any trauma, but that the lack of physical trauma was not unusual based on her experience.

Tasha and Barbara both testified at Franklin's trial.[2]  According to Tasha, Franklin told her and Barbara that they were his girlfriends.  Tasha testified that Franklin showed her a "[n]asty movie . . . [with] women and men . . . [h]unching," and "put[ting] their middle part in the girl middle part."  Tasha also testified that there were children in the movies and that adults were "hunching" on the children.  Barbara also testified that Franklin showed her pornographic movies.

Using anatomically correct therapy dolls, both girls demonstrated the alleged acts that Franklin committed against them.  Barbara testified that Franklin touched his penis to her vagina and put his penis in her mouth and anus.  Barbara testified that the sexual abuse was painful and that she saw blood in her underwear after the acts.  Barbara also testified that she saw Franklin sexually abusing Tasha.  Tasha testified that Franklin touched her vagina with his hand, that he put his penis in her vagina, anus, and mouth, and that "[m]ilk" came out of Franklin's penis.  Tasha testified that the sexual abuse was painful and caused her to bleed between her legs as a result.  Tasha testified that the abuse had occurred on more than one occasion.  Barbara and Tasha both testified that Franklin had instructed them to be quiet during the sexual abuse and warned them not to tell Conesha about the acts.

---

[2]Provided that the proper procedures are followed, the version of Article 38.37 of the Texas Code of Criminal Procedure that was in effect at the time of Franklin's trial provides for the admission of evidence that the defendant committed previous sexual offenses with any child victim in trials for sexual assault of child victims.  The evidence is admissible for any bearing it has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant.  TEX. CODE CRIM. PROC. ANN. art. 38.37 (West Supp. 2014). Here, Franklin's counsel acknowledged receipt of the State's Article 38.37 notice.

Karrah Dickeson, clinical director of the CAC, was allowed to remain in the courtroom to watch Tasha and Barbara testify, over Franklin's objection. Dickeson informed the jury that she treated the children and taught them to use the term sexual abuse during their therapy because they "need[ed] to know what it is that they have experienced." Dickeson testified that both children exhibited symptoms of traumatic stress.

After the State's closing argument, in which it told the jury to "[g]o back there and fight for those little girls," the jury found Franklin guilty on all counts.

## II.     The SANE's Reports Were Admissible Hearsay

In his first point of error, Franklin argues that the trial court erred in overruling his hearsay objection to the SANE's reports. "A trial judge's decision on the admissibility of evidence is reviewed under an abuse of discretion standard and will not be reversed if it is within the zone of reasonable disagreement." *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011) (citing *Davis v. State*, 329 S.W.3d 798, 813–14 (Tex. Crim. App. 2010); *Russeau v. State*, 291 S.W.3d 426, 438 (Tex. Crim. App. 2009)).

Lach testified that she asks for patient history in order to focus the areas of the medical examination and to determine whether to test the patient for sexually-transmitted diseases. The State argued that under Rule 803(4) of the Texas Rules of Evidence, the statements in the reports were admissible because the examinations were conducted for the purpose of medical diagnosis and treatment, not for the purpose of law enforcement. *See* TEX. R. EVID. 803(4). At trial, Franklin objected to the State's offer of the SANE's reports on the ground that they included inadmissible hearsay, were not business records, were made for purposes of litigation, and

7

contained statements from the victims that could be characterized as hearsay within hearsay. The trial court overruled Franklin's objection.

In his first point of error on appeal, Franklin argues only that the trial court erred in admitting Lach's reports because she failed to testify that she informed Tasha and Barbara that a proper diagnosis depended on the veracity of their statements. The State argues that Franklin failed to preserve this complaint because it does not comport with the objection at trial. We disagree.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." TEX. R. EVID. 801(d). "Hearsay is not admissible except as provided by statute or [the Rules of Evidence] or by other rules prescribed pursuant to statutory authority." TEX. R. EVID. 802. There is no question that Lach's report included hearsay; the question is whether the hearsay was admissible. Here, Franklin lodged a hearsay objection. "Once the opponent of hearsay evidence makes the proper objection, it becomes the burden of the proponent of the evidence to establish that an exception applies that would make the evidence admissible in spite of its hearsay character." *Taylor v. State*, 268 S.W.3d 571, 578–79 (Tex. Crim. App. 2008).

The State specifically informed the trial court that it sought to utilize Rule 803(4), an exception that allows for the admission of qualifying hearsay statements. TEX. R. EVID. 803(4). The Rule provides,

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . . .

8

**(4)** **Statements for Purposes of Medical Diagnosis or Treatment.** Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or eternal source thereof insofar as reasonably pertinent to diagnosis or treatment.

*Id.* "This exception is based on the assumption that the patient understands the importance of being truthful with the medical personnel involved to receive an accurate diagnosis and treatment." *Bautista v. State*, 189 S.W.3d 368 (Tex. App.—Fort Worth 2006, pet. ref'd); *see Taylor*, 268 S.W.3d at 580.

Franklin's specific appellate argument that the reports were inadmissible because Lach failed to inform the children of the importance that they tell the truth is based on the Texas Court of Criminal Appeals' opinion in *Taylor*. *See generally Taylor*, 268 S.W.3d 571. *Taylor* looked to federal cases involving Rule 803(4) in deciding how to apply the law to non-medical professionals. *Id.* at 579. In examining several federal cases, *Taylor* noticed that more recent Eighth Circuit holdings

> emphasized the requirement that the record reflect, in cases involving child victims, both 1) that the physician (or counselor or psychologist) explained the importance of knowing the true identity of the assailant to the efficacy of the diagnosis or treatment and 2) that the child manifested an understanding of the need to be truthful.

*Id.* at 582 (citing *United States v. Gabe*, 237 F.3d 954 (8th Cir. 2001); *Olesen v. Class*, 164 F.3d 1096 (8th Cir. 1999)). *Taylor* agreed that

> consistent with the rationale for admitting statements made for purposes of medical diagnosis or treatment over a hearsay objection, it is appropriate to require the proponent of the evidence to show that the out-of-court declarant was aware that the statements were made for that purpose and that "proper diagnosis or treatment depends upon the veracity of such statements."

9

*Id.* at 588–89 (quoting *Jones v. State*, 92 S.W.3d 619, 623 (Tex. App.—Austin 2002, no pet.), *abrogated by Taylor*, 268 S.W.3d 571).

The veracity requirement addressed in *Taylor* is subsumed within Rule 803(4) and must be met by a party seeking to utilize this exception to Rule 802. It is clear from the record that the State sought admission of Lach's reports under Rule 803(4). Thus, we find that Franklin's hearsay objection, which followed the State's explanation of its desire to use Rule 803(4), was sufficient to preserve Franklin's complaint on appeal. *See Taylor*, 268 S.W.3d at 575–78 (deciding veracity issue in absence of specific objection). Because we find that Franklin's first issue is preserved, we address it on the merits.

To determine whether a child understands the importance of truthfulness when speaking to medical personnel, the reviewing court looks to the entire record. *See Green v. State*, 191 S.W.3d 888, 896 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd). Although *Taylor* requires some showing that the declarant was made aware that proper diagnosis or treatment depended on the veracity of her statement, the method of meeting the requirement differs depending on whether the statement was made to a medical or non-medical professional, as expressed in the following excerpt:

> Still, we recognize that reclining on a therapist's or psychiatrist's couch is not quite the same as sitting in the emergency room in the immediate aftermath of an injury or on the physician's cold examination table in the interest of diagnosing and curing some exigent disease or ailment. In the latter contexts, it seems only natural to presume that adults, and even children of a sufficient age or apparent maturity, will have an implicit awareness that the doctor's questions are designed to elicit accurate information and that veracity will serve their best interest. This explains the almost universal tendency of courts under these circumstances to assay the record, not for evidence of such an awareness, but for any evidence that

10

would negate such an awareness, even while recognizing that the burden is on the proponent of the hearsay to show that the Rule 803(4) exception applies.

In the therapist's office, however, this tacit presumption is far less compelling. It is not always so readily apparent (indeed, it may not always be accurate) in the mental-health context that truth-telling is vital. Not even an older, more mature child (maybe not even an adult) will necessarily recognize and appreciate the necessity (assuming there is a necessity) always to tell a mental-health provider the truth in order to assure the efficacy of treatment. In this context we think it is incumbent upon the proponent of the hearsay exception to make the record reflect both 1) that truth-telling was a vital component of the particular course of therapy or treatment involved, and 2) that it is readily apparent that the child-declarant was aware that this was the case. Otherwise, the justification for admitting the out-of-court statement over a valid hearsay objection is simply too tenuous.

*Taylor*, 268 S.W.3d at 589–90 (footnotes omitted). Thus, unlike statements made to non-medical professionals, which require affirmative evidence in the record on the issue of veracity, courts can infer from the record that the victim knew it was important to tell a SANE the truth in order to obtain medical treatment or diagnosis. *See Prieto v. State*, 337 S.W.3d 918, 921 (Tex. App.—Amarillo 2011, pet. ref'd); *see also Thomas v. State*, No. 03-11-00254-CR, 2013 WL 4516168, at *3 (Tex. App.—Austin Aug. 23, 2013, no pet.) (mem. op., not designated for publication); *Duckworth v. State*, No. 04-12-00077-CR, 2013 WL 3871058, at *1–2 (Tex. App.—San Antonio July 24, 2013, no pet.) (mem. op., not designated for publication); *Bahle v. State*, Nos. 05-10-01057-CR & 05-10-01058-CR, 2012 WL 1382568, at *4 (Tex. App.—Dallas Apr. 23, 2012, no pets.).[3]

---

[3]Although these unpublished cases have no precedential value, we may take guidance from them "as an aid in developing reasoning that may be employed." *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd).

Here, Lach testified that she identified herself as a nurse to Tasha and Barbara and explained that she was meeting with them to conduct a medical examination. Lach detailed the procedures of the examination to both children, and testified that in her opinion, the children understood that the examination was for medical diagnosis and treatment. Before asking Tasha and Barbara about their medical history, she informed them that she would be writing down their statements verbatim. After receiving their statements, Lach conducted a detailed genital examination of each child using a colposcope.

Reviewing the entire record, we conclude that the evidence is sufficient to support a finding that Tasha and Barbara understood the need to be truthful during Lach's medical examination. Accordingly, we conclude that the trial court did not abuse its discretion in finding that the statements contained within Lach's reports, as well as her testimony at trial, were admissible under Rule 803(4). We overrule Franklin's first point of error.

## III. Franklin Did Not Preserve any Issue Related to Limitation of Cross-Examination

Hughes testified that in her opinion, Tasha and Barbara did not exhibit any signs of coaching and "appear[ed] to be testifying to something that they did, in fact, actually experience."[4] After Hughes' direct examination, Franklin requested a brief hearing outside of the jury's presence. In *Bass v. State*, the Texas Court of Criminal Appeals held that when the

---

[4]Franklin did not object to Hughes' testimony at the time. "Expert testimony does not assist the jury, and thus is not admissible, if it constitutes 'a direct opinion on the truthfulness' of a child complainant's allegations." *Cantu v. State*, 366 S.W.3d 771, 777 (Tex. App.—Amarillo 2012, no pet.) (quoting *Yount v. State*, 872 S.W.2d 706, 708 (Tex. Crim. App. 1993)). "Expert testimony that a child did not exhibit indications of coaching or manipulation has been held not to constitute an opinion on the child's truthfulness." *Id.* (citing *Schutz v. State*, 957 S.W.2d 52, 73 (Tex. Crim. App. 1997); *Chavez v. State*, 324 S.W.3d 785, 788–89 (Tex. App.—Eastland 2010, no pet.); *Darling v. State*, 262 S.W.3d 920, 924 (Tex. App.—Texarkana 2008, pet. ref'd)); *Reynolds v. State*, 227 S.W.3d 355, 366 (Tex. App.—Texarkana 2007, no pet.).

12

defense opens the door by questioning a child's veracity, the State may be allowed to introduce the defendant's extraneous offenses for the purpose of disproving the defensive theory. *Bass v. State*, 270 S.W.3d 557, 562–63 (Tex. Crim. App. 2008).[5] At the hearing, Franklin (1) argued the inverse of *Bass* by claiming that because the State "directly put the child's veracity at issue," he should "be able to rebut it" without fear that the State would be allowed to discuss extraneous offenses, and (2) requested a ruling from the trial court on whether the State had opened the door to the issue of the children's veracity.[6] Attempting to understand Franklin's argument, the trial court stated, "You're saying the next witnesses they call, the next few witnesses they call, if you get into some things that would open the door, you want me to make a ruling on that now based on what she's testified to. I'm not going to do that." The trial court denied Franklin's preliminary motion for a ruling that the State had opened the door for him to essentially put on a defensive case of fabrication without fear of the State raising extraneous offenses to rebut the defensive theory. After the ruling, Franklin stated,

> And, Your Honor, just while we have the jury out, if the State hasn't done that by the time the children testify, I will need to make a proffer with both children at some point in time for if the door -- if I had received my ruling, the testimony we would have elicited, and I just want to let the Court know that.

On appeal, Franklin argues that the trial court limited his cross-examination and prevented him from raising inconsistencies in the children's testimony. We do not believe that Franklin preserved this issue for our review. First, we do not find that the trial court's

---

[5]We note that much has changed since *Bass* was issued, including the Section 2 amendments to Article 38.37 of the Texas Code of Criminal Procedure. *See* Act of May 17, 2013, 83d Leg., R.S., ch. 387, § 1, secs. 2, 2–a, 2013 Tex. Sess. Law Serv. 1168, 1169 (West) (effective Sept. 1, 2013).

[6]While Franklin's appellate brief argues the arguments raised by trial counsel, he has not cited to this Court any applicable authority supporting the arguments.

preliminary ruling—that the issue of the children's veracity had not yet been raised—was a ruling that specifically limited Franklin's cross-examination. *See* TEX. R. APP. P. 33.1(a). The strategic decision of how to approach the witnesses during cross-examination, including Hughes, was left open for Franklin.

In fact, the record demonstrates that Franklin pointed out several inconsistencies in Tasha's and Barbara's statements. During cross-examination, Tasha and Barbara both testified that they did not tell Hughes that Franklin showed them pornographic movies during the CAC interview. Barbara admitted that she did not tell Hughes about the acts of sexual abuse that she had reenacted for the jury using anatomically correct dolls and that she told Hughes that she bled from her private because Franklin had disciplined her with a belt. While Barbara testified that Franklin had abused her and Tasha in a car in the presence of another adult passenger, Tasha testified that the act did not occur. Even though the State had prepared for six victims of Franklin's previous extraneous offenses to testify had Franklin challenged the fact that those offenses had actually occurred, none of this extraneous-offense testimony was introduced. Thus, it appears that Franklin accomplished his goal of pointing out inconsistencies in the children's statements while avoiding admission of extraneous offenses.

Second, when an accused desires to elicit certain specific responses from a State's witness but is precluded from doing so by the trial judge, the record must contain an offer of proof in order to preserve error. *Duke v. State*, 365 S.W.3d 722, 725 (Tex. App.—Texarkana 2012, pet. ref'd); *see* TEX. R. EVID. 103(a)(2). "'The primary purpose of an offer of proof is to enable the appellate court to determine whether the exclusion was erroneous and harmful.' 'A

14

secondary purpose is to permit the trial judge to reconsider his ruling in light of the actual evidence.'" *Mays v. State*, 285 S.W.3d 884, 890 (Tex. Crim. App. 2009) (quoting 1 Steven Goode, et al., 1 *Texas Practice Series: Guide to the Texas Rules of Evidence* § 103.3 (2d ed. 1993)). Franklin argues that his cross-examination of Hughes and other witnesses was limited. However, although the trial court gave Franklin the opportunity to make an offer of proof, Franklin declined. "'When . . . there is no bill of exception or offer of proof to show the facts the defendant could have proved through cross-examination of an adverse witness, the issue has not been preserved for appellate review.'" *Lewis v. State*, 126 S.W.3d 572, 579 (Tex. App.— Texarkana 2004, pet. ref'd) (quoting *Jenkins v. State*, 948 S.W.2d 769, 775 (Tex. App.—San Antonio 1997, pet. ref'd)). It is unclear what further cross-examination of Hughes or the State's witnesses would have yielded.

We overrule Franklin's second point of error on appeal because we find that it is not preserved for our review.

## IV.    Error in Exempting the CAC Director from the Witness Sequestration Rule Was Harmless

Prior to Tasha's and Barbara's testimony, the State asked if Dickeson, the CAC director and children's therapist, could be excused from the witness sequestration rule because she needed to review the children's testimony in order to offer her expert opinions. Franklin objected to Dickeson's exclusion from the witness sequestration rule and asked the State to explain why she would need to see the children testify. Without waiting for the State to answer, the trial court overruled Franklin's objection and allowed Dickeson to remain in the courtroom while Tasha and Barbara testified. Franklin argues that the trial court's ruling was erroneous.

15

A trial court's decision to permit a witness to remain in the courtroom after Rule 614 of the Texas Rules of Evidence (the witness sequestration rule) is invoked is reviewed for an abuse of discretion. *Moore v. State*, 882 S.W.2d 844, 848 (Tex. Crim. App. 1994).

> Rule 614 requires a trial court to exclude testifying witnesses from the courtroom unless the witness is (1) a party or the spouse of a party in a civil case, (2) an officer or employee of a legal entity named in the lawsuit who has been designated as the entity's representative for purposes of the trial, (3) a person whose presence is shown by a party to be essential to the presentation of the party's cause, or (4) the victim in a criminal case, unless the victim is to testify and the court determines that the victim's testimony would be materially affected by hearing other trial testimony.

*Allen v. State*, 436 S.W.3d 815, 822 (Tex. App.—Texarkana 2014, pet. ref'd) (citing TEX. R. EVID. 614; *Bryant v. State*, 282 S.W.3d 156, 161 (Tex. App.—Texarkana 2009, pet. ref'd)). "The party claiming an exemption under the witness sequestration rule bears the burden of showing that the exemption applies." *Id.* (citing *White v. State*, 958 S.W.2d 460, 463 (Tex. App.—Waco 1997, no pet.)).

As we recently stated in *Allen*, "[a] conclusory statement that the witness' presence is 'essential and necessary' does not meet the burden to show that an exception under Rule 614 applies." *Id.* (citing *Bryant*, 282 S.W.3d at 161). Here, aside from claiming Dickeson as an expert witness, the State did not offer any reason why she was required to remain in the courtroom. Thus, Dickeson's exemption from the witness sequestration rule was erroneous.

However, unless the error in allowing Dickeson to remain in the courtroom affected Franklin's substantial rights, the error is harmless. *See id.* at 823 (citing *Bryant*, 282 S.W.3d at 161; *Russell v. State*, 155 S.W.3d 176, 181 (Tex. Crim. App. 2005)). To address the issue of harm in this circumstance, we consider (1) whether Dickeson actually heard Tasha's and

16

Barbara's testimony and (2) whether Dickeson's testimony "either contradicted the testimony of a witness from the opposing side or corroborated testimony of a witness she heard." *See id.* at 824 (citing *Bryant*, 282 S.W.3d at 161–62; *Wilson v. State*, 179 S.W.3d 240, 249 (Tex. App.— Texarkana 2005, no pet.)); *Cooks v. State*, 844 S.W.2d 697, 733 (Tex. Crim. App. 1992); *White*, 958 S.W.2d at 465; *see Webb v. State*, 766 S.W.2d 236, 239–40 (Tex. Crim. App. 1989). Franklin "has the burden to demonstrate that the record supports a finding under both prongs." *See Allen*, 436 S.W.3d at 824 (citing *Bryant*, 282 S.W.3d at 162). If both prongs are met, then the error "most likely resulted in harm." *Id.* However, the main "'question in assessing the harm of allowing [Dickeson] to remain in the courtroom is whether she was influenced in her testimony by the testimony she heard.'" *Id.* (quoting *Russell v. State*, 155 S.W.3d 176, 181 (Tex. Crim. App. 2005)).

Here, the record affirmatively demonstrates that Dickeson actually heard the children's testimony. However, the State's direct examination of Dickeson was limited to her qualifications and the fact that (1) she treated the children, (2) she taught them the term "sexual abuse" so that they would understand what they had experienced, (3) the children understood that they were receiving treatment, and (4) the children exhibited traumatic stress symptoms. The State's next line of questioning sought to have Dickeson divulge the substance of the statements Tasha and Barbara made to her during the course of the treatment. Essentially, the State desired to use Dickeson as another outcry witness. However, after the trial court sustained Franklin's objection to this line of questioning, the State rested its case. Thus, based on the record here, which demonstrates Dickeson's minimal usefulness as a witness in light of the trial

17

court's evidentiary ruling, we cannot conclude that Franklin established that Dickeson's testimony was influenced by Tasha's and Barbara's testimony.

Moreover, "'we need not reverse if, after examining the record as a whole, we have fair assurance that the error did not influence the jury's deliberations to appellant's detriment or had but a slight effect.'" *Id.* (quoting *Ladd v. State*, 3 S.W.3d 547, 566 (Tex. Crim. App. 1999)); *see* TEX. R. APP. P. 44.2(b). In light of the testimony of the State's other witnesses, including Tasha and Barbara, we have fair assurance that Dickeson's negligible testimony either did not influence the jury or had but slight effect. Consequently, we overrule Franklin's point of error.

## V.      State's Improper Closing Argument Was Harmless

"We review a trial court's ruling on an objection to a jury argument for abuse of discretion." *Lemon v. State*, 298 S.W.3d 705, 707 (Tex. App.—San Antonio 2009, pet. ref'd); *see Davis v. State*, 329 S.W.3d 798, 825 (Tex. Crim. App. 2010); *Garcia v. State*, 126 S.W.3d 921, 924 (Tex. Crim. App. 2004); *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001). Franklin's complaint on appeal stems from the following portion of the State's closing argument:

> [BY THE STATE]: . . . .We got there. I got there. I told you on opening I was going to get there, and we got there this week. They did their part. You do your part by those girls now. They need you. You are all they have. They get one shot at this day, and you are all they have. ***Go back there and fight for those little girls***.[7]

---

[7]This opinion focuses solely on this sentence of the State's argument.

18

[BY THE DEFENSE]: Objection, Your Honor. That's completely improper telling a jury to be an advocate for the State, individual jurors to advocate for the State's position back there.

THE COURT: It's overruled.

(Emphasis added).

Franklin argues that the State's directive to the jury to "fight for those little girls" was improper. "Permissible jury argument falls into one of four categories: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) an answer to the argument of opposing counsel; or (4) a plea for law enforcement." *Cannady v. State*, 11 S.W.3d 205, 213 (Tex. Crim. App. 2000); *see Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008). Because the State's comments clearly do not fit within the first three categories of permissible jury argument, the State argues that it made a plea for law enforcement.

"A proper plea for law enforcement may take many forms," including arguing the relationship between the jury's verdict and the deterrence of crime in general, or arguing the impact of the jury's verdict on the community. *Borjan v. State*, 787 S.W.2d 53, 55–56 (Tex. Crim. App. 1990) (per curiam). However, the State may not "argue that the community or any particular segment of the community expects or demands either a guilty verdict or a particular punishment." *Id.* at 56. "Jurors may not be representatives of the complainant, as opposed to representatives of the community; nevertheless, there is still pressure to accede to the demands and wishes of the prosecutor." *Dorsey v. State*, 709 S.W.2d 207, 210 (Tex. Crim. App. 1986).

19

Thus, there is little distinction between community demands and victim demands.[8] *Id.* Here, we find that asking the jury to "fight for those little girls" constituted "a plea for abandonment of objectivity," which does not fall within the four categories of permissible jury argument. *See Brandley v. State*, 691 S.W.2d 699, 712 (Tex. Crim. App. 1985); *Ayala*, 267 S.W.3d at 435–36; *see also People v. Nelson*, 890 N.Y.S.2d 189, 192 (N.Y. App. Div. 2009) (finding that "the prosecutor inappropriately attempted to appeal to the sympathy of the jury by asking the jury to 'fight for [the victim]' during deliberations").

However, we conclude that the State's comments were harmless. In reaching this conclusion, we apply the three factors established by the Court of Criminal Appeals in *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998), for analyzing harm from improper jury argument. The factors are: (1) severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks); (2) measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge); and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction). *Id*.

The State's objectionable comments consisted of a few sentences and followed its proper discussion of the evidence and its argument that the evidence was sufficient to meet the elements of the alleged offenses. We conclude that the severity of the misconduct as measured by the prejudicial effect of the State's remarks is slight. The jury was reminded of the State's burden of

---

[8]Indeed, arguments suggesting that the jury should bow to victim demands run the risk of improperly seeking to evoke the jury's emotions. *See Dorsey*, 709 S.W.2d at 210; *Ayala v. State*, 267 S.W.3d 428, 435–36 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd); *Soto v. State*, No. 13-10-00013-CR, 2011 WL 5000393, at \*12 (Tex. App.—Corpus Christi Oct. 20, 2011, no pet.) (mem. op., not designated for publication) (State's argument "The family needs justice" improperly sought to evoke jury's sympathy); *see also Mann v. State*, 718 S.W.2d 741, 746 (Tex. Crim. App. 1986) (assuming comment by State that "[w]e get one shot at [the defendant]" was improper).

proof prior to the State's closing argument and in the court's jury charge. Importantly, the strength of the evidence supporting the conviction was strong. Tasha's and Barbara's testimony alone was sufficient to support the jury's verdicts, and Franklin has raised no challenge to the legal sufficiency of the evidence. *See Allen*, 436 S.W.3d at 831. After examining the *Mosley* factors, we have fair assurance that the State's comments had little or no effect. *See Mosley*, 983 S.W.2d at 259–60. Accordingly, we overrule Franklin's last point of error.

## VI.     Conclusion

We affirm the trial court's judgment.


Bailey C. Moseley
Justice


Date Submitted:     February 5, 2015
Date Decided:       March 10, 2015

Publish

21