**Opinion filed July 31, 2019**



**In The**

# Eleventh Court of Appeals

_____

**No.  11-17-00163-CR**

_____

**MARCUS EARLDALE HENSLEE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 42nd District Court**

**Taylor County, Texas**

**Trial Court Cause No. 27279A**

**M E M O R A N D U M   O P I N I O N**

The jury convicted Marcus Earldale Henslee of the first-degree felony offense of continuous sexual abuse of a child and assessed his punishment at confinement for a term of thirty-five years in the Institutional Division of the Texas Department of Criminal Justice.  Appellant brings four issues on appeal.  In his first three issues, he contends that the trial court erred when it (1) failed to submit a jury instruction on the affirmative defense of insanity, (2) permitted a sexual assault nurse examiner to testify about statements made by the child victim during a sexual

assault exam, and (3) failed to require the attendance of a defense witness. In his fourth issue, Appellant contends that trial counsel was ineffective for failing to secure the attendance of a defense witness. We affirm.

*Background Facts*

The victim, K.R., was Appellant's stepdaughter. K.R. testified that, when she was nine years old, Appellant had sex with her over a period of five weeks. Appellant would pay K.R. $2 a week to have sex with him, and K.R. had $10 before it ended. K.R. testified that Appellant would also let her play video games, which K.R. was not supposed to play, if she had sex with him. K.R. then described the various sexual acts that Appellant instructed her to do.

K.R.'s mother testified that she was married to Appellant and that she and her children, K.R. and M.R., lived with him. While K.R.'s mother was at work, Appellant was the primary caregiver for the children. K.R.'s mother testified that Appellant told her that he touched K.R., "fingered" K.R., and had K.R. perform oral sex on him.

April Songer, a sexual assault nurse examiner, testified that she conducted a sexual assault exam on K.R. two days after the last alleged sexual assault. Songer testified that she did not locate any acute injuries on K.R. but that the lack of injuries is not uncommon in this type of case because the tissues heal within twenty-four to seventy-two hours.

*Request for an Insanity Defense Instruction*

In his first issue on appeal, Appellant contends that the trial court erred when it failed to submit a jury instruction on the affirmative defense of insanity. In accordance with the Texas Code of Criminal Procedure, Appellant filed notice of his intent to raise an insanity defense at trial. *See* TEX. CODE CRIM. PROC. ANN. art. 46C.051 (West 2018). The trial court permitted Appellant to present evidence

2

regarding his mental state. However, the trial court subsequently denied Appellant's request to submit an insanity issue in the court's charge.

Appellant asserts that, at or near the time of the offense, he suffered from "depression, agitation, bipolar diagnosis, ADD, autism, not being able to recognize loved ones, being taken to a mental hospital, acting in a manner not consistent with character, needing help and being unaware of his actions." Appellant contends that, because of his mental and psychological problems and because he was unaware of his actions, he was entitled to an insanity instruction. We disagree.

"[A]ll alleged jury-charge error must be considered on appellate review regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). In our review of a jury charge, we first determine whether error occurred; if no error occurred, our analysis ends. *Id.* If error occurred, whether it was preserved then determines the degree of harm required for reversal. *Id.*; *see Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)). Where, as here, Appellant raised a timely objection to the jury charge, Appellant will obtain a reversal if he suffered some harm as a result of the error. *See Sakil v. State*, 287 S.W.3d 23, 25–26 (Tex. Crim. App. 2009).

A defendant is entitled to an instruction on a defensive issue if the issue is raised by the evidence, whether that evidence is strong or weak, unimpeached or contradicted, and regardless of what the trial court may think about the credibility of the defense. *Ferrel v. State*, 55 S.W.3d 586, 591 (Tex. Crim. App. 2001). We review the evidence in the light most favorable to the defendant to determine whether a defensive issue should have been submitted. *Id.*

The affirmative defense of insanity applies if, "at the time of the conduct charged, the actor, as a result of severe mental disease or defect, did not know that his conduct was wrong." TEX. PENAL CODE ANN. § 8.01(a) (West 2011). "In a case

3

tried to a jury, the issue of the defendant's sanity shall be submitted to the jury only if the issue is supported by competent evidence." CRIM. PROC. art. 46C.151(a). If evidence from any source raises the issue of insanity, the trial court must include an instruction on this defense in the jury charge. *Gibson v. State*, 726 S.W.2d 129, 132 (Tex. Crim. App. 1987).

Kathryn Henslee, a registered nurse and Appellant's stepmother, testified at trial about Appellant's mental state. Kathryn testified that, after K.R. disclosed the alleged abuse, she believed that Appellant needed psychological help because Appellant tried to commit suicide. Kathryn believed that, for months, Appellant's diabetes affected him such that "[i]t was out of control, and [Appellant] was drinking at the time. He would not know what was going on. He was unaware of a lot of his actions." She also testified that, on the day that Appellant and K.R.'s mother were getting married, Appellant was walking down a highway trying to get hit by a car.

K.R.'s mother testified that she took Appellant to the doctor because he threatened to kill himself on two occasions. Appellant was then put on medication. Appellant was treated for depression and anxiety, and K.R.'s mother believed that Appellant was also autistic and had symptoms of bipolar disorder. When asked about Appellant's mental state during their marriage, K.R.'s mother stated that, a few times, Appellant would get upset and drink too much. K.R.'s mother testified that, although she told Appellant that he had "lost his sanity" because of what he did to her daughter, she did not actually believe that he had lost his sanity.

Appellant's father, Maurice Allen (Bubba) Henslee, testified that the many deaths in Appellant's family affected Appellant: both sets of grandparents, Appellant's mother, and Appellant's only uncle. Bubba also testified that Appellant developed PTSD after he saw a friend killed on the highway. The last death prior to the offense occurred in 2014. Bubba testified that, around the time of the alleged offense, Appellant was very agitated and struggled with bipolar disorder, ADD, and

4

autism to a certain degree. Appellant came home very agitated and upset after K.R. told her mother what happened with Appellant, and Kathryn took Appellant to Abilene Behavioral Health. The doctors determined that Appellant was "severely depressed" and that Appellant's blood sugar was "dangerously high." At the time, Bubba believed that Appellant was a "totally different person." Bubba believed that Appellant was under a lot of stress. However, when the State asked him if he was aware that Appellant admitted to committing various sexual acts with K.R., Bubba stated that he did not know that and conceded that Appellant's stress did not justify Appellant's actions.

At the charge conference, Appellant objected to the jury charge because the trial court did not charge the jury on the affirmative defense of insanity. The State argued that there was no evidence that Appellant did not know the difference between right or wrong at the time that the offense was alleged. The trial court overruled Appellant's objection.

When considered with facts and circumstances concerning the accused and the offense, lay opinion testimony may be sufficient to raise the affirmative defense of insanity. *Pacheco v. State*, 757 S.W.2d 729, 736 (Tex. Crim. App. 1988). However, evidence that the defendant was "not himself" is not, alone, sufficient to establish legal insanity. *Kelly v. State*, 195 S.W.3d 753, 757 (Tex. App.—Waco 2006, pet. ref'd). Furthermore, "the existence of a mental disease, alone, is not sufficient to establish legal insanity; rather, the accused must have been mentally ill at the time of the offense to the point that he did not know his conduct was wrong." *Nutter v. State*, 93 S.W.3d 130, 132 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (citing *Plough v. State*, 725 S.W.2d 494, 500 (Tex. App.—Corpus Christi 1987, no pet.)).

Although the testimony of K.R.'s mother, Kathryn, and Bubba may have shown that Appellant suffered from mental disease or defect, this testimony did not

5

show that it caused Appellant to be unaware that his conduct was wrong at the time of the offense. None of the witnesses expressed an opinion that, at any time, Appellant did not know that his actions were wrong. Therefore, the trial court did not err by not submitting the requested insanity issue in the court's charge. We overrule Appellant's first issue.

*Admissibility of Testimony from SANE*

In his second issue on appeal, Appellant contends that the trial court abused its discretion by permitting the sexual assault nurse examiner to testify about statements made by K.R. during K.R.'s sexual assault exam because those statements were hearsay. Specifically, Appellant asserts that there is no evidence in the record that K.R. was aware that her statements were made for the purposes of diagnosis and treatment and that proper care depended on the veracity of such statements. We disagree.

We review a trial court's ruling on admissibility of evidence for an abuse of discretion. *Coble v. State*, 330 S.W.3d 253, 272 (Tex. Crim. App. 2010). We will uphold the trial court's decision unless it lies outside the zone of reasonable disagreement. *Salazar v. State*, 38 S.W.3d 141, 153–54 (Tex. Crim. App. 2001). Songer testified that she took a history from K.R. for K.R.'s sexual assault exam. The prosecutor asked Songer, "Do you recall what she told you?" Appellant lodged a hearsay objection at this point. The State responded that it was a statement "with regards to medical examination," and the trial court overruled the objection. Songer testified that K.R. stated that Appellant started having sex with her about five weeks prior and would give her money to have sex with him. Songer described the various sexual acts that K.R. told her that Appellant had performed on K.R., the last of which occurred two days before the examination.

Hearsay is a statement, other than one made by the declarant while testifying at trial, that is offered to prove the truth of the matter asserted. TEX. R. EVID. 801(d);

*Tienda v. State*, 479 S.W.3d 863, 874 (Tex. App.—Eastland 2015, no pet.). Hearsay is inadmissible except as provided by statute or the Texas Rules of Evidence. TEX. R. EVID. 802; *Tienda*, 479 S.W.3d at 874.

Texas Rule of Evidence 803(4) provides the following exception to the hearsay rule regardless of whether the declarant is available as a witness:

(4) **Statement Made for Medical Diagnosis or Treatment.**

A statement that:

    (A) is made for—and is reasonably pertinent to—medical diagnosis or treatment; and

    (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause.

TEX. R. EVID. 803(4). This hearsay exception assumes that the patient understands the importance of being truthful with the medical personnel involved to receive an accurate diagnosis and treatment. *Bautista v. State*, 189 S.W.3d 365, 368 (Tex. App.—Fort Worth 2006, pet. ref'd). "[I]t seems only natural to presume that adults, and even children of a sufficient age or apparent maturity, will have an implicit awareness that the [medical personnel]'s questions are designed to elicit accurate information and that veracity will serve their best interest." *Taylor v. State*, 268 S.W.3d 571, 589 (Tex. Crim. App. 2008).

Generally, a proponent of a statement made for the purpose of medical diagnosis or treatment has the burden to show that the "declarant was aware that the statements were made for that purpose and that 'proper diagnosis or treatment depends upon the veracity of such statements.'" *Id.* (quoting *Jones v. State*, 92 S.W.3d 619, 623 (Tex. App.—Austin 2002, no pet.)); *see also Fahrni v. State*, 473 S.W.3d 486, 497 (Tex. App.—Texarkana 2015, pet. ref'd); *Franklin v. State*, 459 S.W.3d 670, 677 (Tex. App.—Texarkana 2015, pet. ref'd); *Prieto v. State*, 337 S.W.3d 918, 921 (Tex. App.—Amarillo 2011, pet. ref'd). However, courts can infer

from the record that the victim knew it was important to tell a sexual assault nurse examiner the truth in order to obtain medical treatment or diagnosis. *Fahrni*, 473 S.W.3d at 498; *Franklin*, 459 S.W.3d at 677; *Prieto*, 337 S.W.3d at 921; *see also Forkert v. State*, No. 11-16-00279-CR, 2018 WL 4840704, at *6 (Tex. App.—Eastland Oct. 4, 2018, no pet.) (mem. op., not designated for publication).

Although K.R. was eleven at the time of trial, she testified that she knew the difference between the truth and a lie. There was nothing in the record to indicate that K.R. was unaware that the purpose of Songer's questions was to provide medical treatment or diagnosis or that K.R. was unaware of the necessity to be truthful. *See Taylor*, 268 S.W.3d at 589. Accordingly, we can infer from the record that K.R. knew it was important to tell Songer the truth in order to obtain medical treatment or diagnosis. *See Franklin*, 459 S.W.3d at 677 (citing *Prieto*, 337 S.W.3d at 921). We conclude that the trial court did not abuse its discretion by overruling Appellant's hearsay objection to Songer's testimony. We overrule Appellant's second issue.

*Compulsory Process*

In his third issue, Appellant contends that the trial court erred when it did not require the attendance of a witness requested by the defense. Specifically, Appellant wanted to call Deputy Lee Kidwell to testify that K.R.'s mother allegedly told him that K.R. told her that the sexual abuse occurred over a two-week period. Appellant argues that this error violated his constitutional right to compulsory process and denied him the right to present rebuttal evidence—that the abuse did not occur over a period in excess of thirty days, as required to establish a conviction for continuous sexual assault. We disagree.

We review a complaint that the trial court violated a defendant's right to compulsory process for an abuse of discretion. *Emenhiser v. State*, 196 S.W.3d 915, 921 (Tex. App.—Fort Worth 2006, pet. ref'd) (citing *Drew v. State*, 743 S.W.2d 207, 225 n.11 (Tex. Crim. App. 1987)); *Rodriguez v. State*, 90 S.W.3d 340, 358 (Tex.

8

App.—El Paso 2001, pet. ref'd). The right to compulsory process is "the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies." *Coleman v. State*, 966 S.W.2d 525, 527 (Tex. Crim. App. 1998) (quoting *Washington v. Texas*, 388 U.S. 14, 19 (1967)). It does not guarantee, however, the right to secure evidence from any and all witnesses; rather, compulsory process is guaranteed only for obtaining evidence that would be both material and favorable to the defense. *See id.* at 527–28.

K.R.'s mother denied that K.R. told her that the abuse occurred for two weeks. Instead, K.R.'s mother testified that Appellant was the person who told her that it "just happened a few weeks." To support his contention that K.R. told her mother that the abuse happened over the course of two weeks, Appellant attempted to offer Deputy Kidwell's offense report during the cross-examination of K.R.'s mother. The State objected to the report on the basis that it had not been properly authenticated. Appellant conceded that it was not properly authenticated but asserted that Appellant would later call Deputy Kidwell as a witness. The trial court did not receive the report into evidence. Furthermore, Deputy Kidwell's report is not a part of the appellate record because it was not offered as an offer of proof.

Later during K.R.'s cross-examination, Appellant asked K.R. if she told her mother that "it happened over . . . a two-week period." K.R. stated that "[Appellant] told [K.R.'s] mother" that it happened over a two-week period, rather than K.R. saying that it happened over a two-week period. Appellant then asked: "[I]f [K.R.'s mother] did tell somebody you told her it was two weeks, that's not true?" and K.R. responded: "Yes, sir."

At the conclusion of the evidence and outside the presence of the jury, Appellant's trial counsel informed the trial court that he had requested the issuance of a subpoena for Deputy Kidwell but that the subpoena had not been served yet. In

that regard, Appellant did not request the issuance of the subpoena for Deputy Kidwell until 10:41 a.m. that day. Trial Counsel appeared to be asking the trial court for an order requiring Deputy Kidwell to appear at trial. Even though Deputy Kidwell had not been served with the subpoena, trial counsel informed the trial court that he had spoken with Deputy Kidwell and that Deputy Kidwell refused to come to court.

The trial court asked Appellant's trial counsel to explain the purpose of the admission of the testimony that he sought to introduce through Deputy Kidwell. Trial counsel stated that he anticipated that Deputy Kidwell would say that K.R.'s mother told him that K.R. told her that the abuse occurred over a two-week period. The State responded by asserting that Deputy Kidwell's report was not properly authenticated earlier when trial counsel referred to it during K.R.'s mother's testimony and that its contents constituted hearsay. The trial court appeared to be concerned that the subpoena for Deputy Kidwell had not been requested until that day. The trial court then asked for a portion of the record to be read back. A portion of the testimony was read back, but the reporter's record does not indicate what portion was read back. The trial court then announced: "All right. We are going to proceed. Bring the jury in." Appellant's trial counsel then rested, and both sides closed.

As set forth above, the record is not clear as to the basis for the trial court's ruling. The trial court may have based its ruling on a determination that Appellant had not been diligent in seeking the issuance of the subpoena on Deputy Kidwell. Or the trial court's ruling could have been based on a determination that the anticipated testimony of Deputy Kidwell would not have been admissible since the ruling immediately followed the reading back of earlier testimony. Irrespective of the basis of the trial court's ruling, the record does not establish that the trial court abused its discretion. We first note that the trial court did not quash the subpoena

10

for Deputy Kidwell. Furthermore, the right to compulsory process is dependent upon an accused's initiative and is triggered by the exercise of "deliberate planning and affirmative conduct." *Emenhiser*, 196 S.W.3d at 922 (quoting *Rodriguez*, 90 S.W.3d at 358). Appellant's delay in seeking the issuance of a subpoena for Deputy Kidwell until after trial had started supports a determination that he did not trigger the right to compulsory process. *See Rodriguez*, 90 S.W.3d at 358 (holding that trial court did not abuse its discretion by quashing subpoena for school records when defendant waited until the time of trial to complain that subpoena had not been served, and compliance with subpoena would have delayed trial). We overrule Appellant's third issue.

*Ineffective Assistance of Counsel*

In his fourth issue, Appellant contends that, if we determine that Appellant's trial counsel should have sought a writ of attachment to preserve error on his third issue, trial counsel was ineffective. Appellant asserts that counsel could have compelled the officer's appearance by requesting a writ of attachment. We disagree.

In order to establish that trial counsel rendered ineffective assistance at trial, Appellant must show that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that the result would have been different but for counsel's errors. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984); *Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005); *Thompson v. State*, 9 S.W.3d 808, 812–13 (Tex. Crim. App. 1999). Courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and Appellant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Strickland*, 466 U.S. at 689; *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). "[C]ounsel is strongly presumed to have rendered adequate assistance

and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.

"[A]ny allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson*, 9 S.W.3d at 814 (quoting *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996)). Under normal circumstances, the record on direct appeal is generally undeveloped and rarely sufficient to overcome the presumption that trial counsel rendered effective assistance. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). The Court of Criminal Appeals has said that "trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). If trial counsel did not have an opportunity to explain his actions, we will not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001).

Article 24.12 of the Texas Code of Criminal Procedure provides in relevant part:

> When a witness who resides in the county of the prosecution has been duly served with a subpoena to appear and testify in any criminal action or proceeding fails to so appear, the attorney representing the state or the defendant may request that the court issue an attachment for the witness.

CRIM. PROC. art. 24.12 (West Supp. 2018). Although Appellant applied for a subpoena for Deputy Kidwell, Deputy Kidwell had not been served with the subpoena. Because Deputy Kidwell was not served, Appellant was not entitled to a writ of attachment. *See id.*; *Ford v. State*, 14 S.W.3d 382, 391–92 (Tex. App.—Houston [14th Dist. 2000, no pet.) (holding that the trial court did not err by refusing to issue a writ of attachment for a witness who was not duly and properly served

with a subpoena); *see also Erwin v. State*, 729 S.W.2d 709, 713–14 (Tex. Crim. App. 1987). Thus, trial counsel was not ineffective for failing to request a writ of attachment.

Appellant also asserts that his trial counsel was ineffective for failing to secure Deputy Kidwell's attendance at trial. We first note that the record is silent with respect to trial counsel's thought processes concerning his efforts to secure Deputy Kidwell's attendance at trial. Direct appeal is usually an inadequate vehicle to raise a claim of ineffective assistance of counsel because the record is generally undeveloped. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). Trial counsel should ordinarily have an opportunity to explain his actions before an appellate court denounces counsel's actions as ineffective. *Id.*

Even if it could be argued the failure to secure the attendance of Deputy Kidwell was ineffective assistance, there must also be a showing of prejudice under the second prong of *Strickland*. Under *Strickland*, Appellant had the burden to show "whether it is 'reasonably likely' the result [of the trial] would have been different." *Harrington v. Richter*, 562 U.S. 86, 111 (2011) (quoting *Strickland*, 466 U.S. at 696). "The likelihood of a different result must be substantial, not just conceivable." *Id.* at 112.

The information that Appellant sought to offer through Deputy Kidwell constituted double hearsay: (1) K.R.'s alleged statement to her mother, and (2) her mother's alleged statement to Deputy Kidwell relaying K.R.'s alleged statement. When double hearsay is involved, to be properly admissible, each level of hearsay must fall under an exception. *Sanchez v. State*, 354 S.W.3d 476, 485–86 (Tex. Crim. App. 2011) ("When hearsay contains hearsay, the Rules of Evidence require that each part of the combined statements be within an exception to the hearsay rule."); *see* TEX. R. EVID. 805. As noted previously, the State asserted that Deputy Kidwell's testimony that Appellant sought to offer constituted hearsay. Appellant has neither

addressed nor cited any authority for the admissibility of the double hearsay testimony that he sought to offer through Deputy Kidwell. In the absence of a showing that Deputy Kidwell's testimony would have been admissible because it did not constitute hearsay, the record does not establish that Appellant was prejudiced or that the result of the proceeding would have been different had Deputy Kidwell testified at trial. Accordingly, we overrule Appellant's fourth issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY

CHIEF JUSTICE


July 31, 2019

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[1]

Willson, J., not participating.

---

[1]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.