**AFFIRMED; Opinion Filed December 8, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-15-00032-CR

**PEDRO SEGURA, JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 422nd Judicial District Court**
**Kaufman County, Texas**
**Trial Court Cause No. 14-00572-422-F**

## MEMORANDUM OPINION

Before Justices Evans, Whitehill, and Schenck
Opinion by Justice Evans

Appellant Pedro Segura, Jr. appeals from the judgment adjudicating him guilty of continuous sexual abuse of a child. In two issues, appellant asserts that the trial court abused its discretion in (1) denying his motion for new trial and (2) admitting the nurse examiner's report. Deciding against appellant's arguments, we affirm the trial court's judgment.

## I. BACKGROUND

A mother discovered that her twelve-year old daughter, Monica, was being sexually abused and called the police.[1] During her forensic interview, Monica identified appellant—her step-grandfather—as her abuser and informed the interviewer that the abuse had been ongoing for about a year. Monica was also physically examined by a sexual assault nurse examiner

---

[1] Monica is the pseudonym assigned to the victim in this case.

(SANE). Appellant was indicted for continuous sexual abuse of a child and a jury found him guilty of the offense. The trial court assessed punishment and sentenced appellant to a prison term of ninety-nine years.

## II. ANALYSIS

### A. Standard of Review

The standard of review of the denial of a motion for new trial or a trial judge's decision on the admissibility of evidence is abuse of discretion. *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007) (motion for new trial); *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011) (admissibility of evidence). Under the applicable standard, the court of appeals does not substitute its judgment for that of the trial court, but simply determines whether the trial court's analysis was arbitrary or unreasonable. *Ford v. State*, 129 S.W.3d 541, 547 (Tex. App.—Dallas 2003, pet. ref'd).

### B. The Trial Court Acted Within its Discretion in Denying the Motion for New Trial

In his first issue, appellant argues that the trial court erred in denying his motion for new trial because he was denied a fair and impartial trial due to juror misconduct.

#### 1. Additional facts

On October 30, 2014, appellant filed a motion for new trial and alleged as follows:

> One or more jurors in the above cause made use of evidence that was gathered outside of the jury room and outside of the juror's personal knowledge and experience. Specifically, one or more jurors searched the internet for information about the Defendant. During the course of the trial one or more jurors engaged in communications about the evidence in violation of the Court's instructions.

The State filed a response and argued that appellant was not entitled to a hearing because his motion for new trial lacked an affidavit establishing juror misconduct. The State also argued that appellant failed to show that any outside influence was received and considered by the jury. At the hearing on December 8, 2014, the trial court agreed to hear the testimony of John Steiger, a

–2–

juror on appellant's trial.[2]  Steiger was questioned about a comment he posted on the Forney Area Incident Scanner Facebook page regarding appellant's arrest which stated:

> I was a member of his jury.  I'm glad I found the deal that says he was registered in '91, because the Court didn't really do a good job this week proving that he didn't do it, or that he did do it, so most of us went off what our gut was saying. Turns out we was right.

Steiger testified that he posted this comment either a day or two after the trial's conclusion and that he learned about appellant being a registered sex offender from one of the other comments on the Facebook page.[3]  Steiger testified that he did not have any additional information on appellant while he was a member of the jury, nor did he take any information regarding appellant from outside the courtroom into the jury room.

Steiger was also questioned about a post he made on his personal Facebook page on the first day of appellant's trial which stated:  "Anybody want to go to jury duty for me tomorrow?  I only sleep a little bit during it today."  In response to this posting, one of Steiger's friends posted "Just yell out hang'em every few seconds, and they will let you go" to which Steiger responded with a thumb's up symbol.  Steiger testified that he did not really sleep while serving as a juror and that he was only joking.  The trial court denied the motion for new trial.

### 2.  Analysis

Rule 606(b) of the Texas Rules of Evidence provides as follows:

(1)  During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment.  The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.

---

[2] Appellant's trial took place from Monday, September 15, 2014 to Wednesday, September 17, 2014.

[3] It appears that Steiger posted this comment in the evening of September 17, 2014, after he had been discharged from the jury.

(2)  A juror may testify:

> (A) about whether an outside influence was improperly brought to bear on any jury; or
>
> (B) to rebut a claim that the juror was not qualified to serve.

*See* TEX. R. EVID. 606(b).  In analyzing the purpose of Rule 606(b), the Texas Court of Criminal Appeals instructed as follows:

> However, Rule 606(b) is not a blanket rule prohibiting all juror testimony. The most important exception to the juror-incompetency rule is that of "an outside influence" that is "improperly  brought to bear" upon a juror. The purpose of this exception is to allow proof of external pressures that are likely to affect the verdict.  Although not explicitly defined in Rule 606(b), this Court explained in *McQuarrie* that an "outside influence" is "something originating from a source outside of the jury room *and* other than from the jurors themselves."

*See Colyer v. State*, 428 S.W.3d 117, 124 (Tex. Crim. App. 2014) (internal citations omitted).

Here, in this case, Steiger testified that he did not have any additional information on appellant while he was a member of the jury, nor did he take any information regarding appellant from outside the courtroom into the jury room.  Steiger further testified that he did not learn of appellant's registered sex offender status until after the trial's conclusion and after he had been discharged from jury service.  Therefore, Steiger's Facebook comment could not have been an "outside influence" on the jury because it was made after the jury had been discharged. In addition, Steiger's other Facebook comment about sleeping during jury service could not be considered an outside influence as it was not related to any factual or legal issue at trial. Moreover, the trial court could have believed Steiger's testimony that he actually did not sleep during trial.  In sum, although Steiger's comments lacked decorum regarding his jury service, nothing about his testimony indicated that the trial court abused its discretion in refusing to grant appellant's motion for new trial.  Accordingly, we overrule appellant's first issue.

**B.      The Trial Court Acted Within its Discretion in Admitting the SANE's Report**

In his second issue, appellant argues that the trial court abused its discretion by admitting the SANE's report and that the testimony should have been excluded under Texas Rules of Evidence 403 and 802, the confrontation clause, and *Crawford v. Washington*, 541 U.S. 36 (2004).

**1.      Additional facts**

Darla Hammer, a registered nurse at Texas Health Presbyterian Hospital of Kaufman, testified at appellant's trial. Hammer testified that she was also trained as a sexual assault nurse examiner. The State offered the report that was included in the sexual assault kit (State's Exhibit Number 2) as evidence and appellant objected on the basis that the report contained hearsay. The State argued that any statements in the report fell within the 803(4) hearsay exception because the information was gathered to facilitate medical treatment. Outside the presence of the jury, appellant's attorney took the witness on voir dire and specifically objected to two sections of the report: (1) the history of the assault based on Hammer's interview of the victim, and (2) the narrative portions of the report which were provided by the victim. The following exchange took place:

| | |
|---|---|
| Appellant's attorney: | Did he -- did you ask her questions to describe in detail how the assault occurred? |
| Hammer: | Yes, sir. |
| Appellant's attorney: | And all that information is embodied within that area of the exhibit? |
| Hammer: | Yes, sir. |
| Appellant's attorney: | Okay. Now, that information has very little to do with providing a sexual assault exam? |
| Hammer: | No, sir. |

| | |
|---|---|
| Appellant's attorney: | Okay. Was this information gathered in order for you to facilitate your taking the sexual assault exam? |
| Hammer: | Yes, sir. |
| Appellant's attorney: | I'm back on the first page, where it talks about history of assault, patient's description of pertinent details of the assault if known by the patient, such as the orifice, penetrated, digital penetration or use of foreign object or oral contact by assailant or oral contact by patient. Does other information other than that appear in your narrative? |
| Hammer: | Yes, sir. |
| Appellant's attorney: | He pulled my pants down? |
| Hammer: | Yes, sir. |
| Appellant's attorney: | I could feel -- I'm having a hard time reading it. I could feel where it was starting to hurt in the middle of my private multiple times last year? |
| Hammer: | Yes, sir. |
| Appellant's attorney: | Okay. Would you agree with me that that information is outside what's medically necessary in order for you to conduct this examination? |
| Hammer: | No, sir. |
| Appellant's attorney: | In fact, weren't you interrogating the child regarding what had happened to her? |
| Hammer: | No, sir. |
| Appellant's attorney: | Were you instructed by law enforcement to gather this information? |
| Hammer: | No, sir. |
| Appellant's attorney: | Okay. Was law enforcement present when you were asking these questions? |
| Hammer: | No, sir. |

Appellant's attorney argued that the victim's statements in the report constituted hearsay and further objected under *Crawford*. The State argued that the exhibit was admissible pursuant

to hearsay exception 803(4).  *See* TEX. R. EVID. 803(4).  The trial court overruled the objections and admitted State's exhibit number 2.  The jury was then brought back in and during her testimony Hammer was asked to read aloud the history of the assault which she had written on State's exhibit number 2:

> The patient told me he would always touch me.  One night he came home drunk.  I was laying on a pallet with my grandma.  He asked her if he could lay here with us.  I guess she said yes 'cause he, he laid there.  He was scooting by me and was touching my butt with my clothes on.  He pulled down my pants a little, but where his hand would fit in there and started touching my private, moving his fingers around, and I could feel where, and it was starting to hurt.  The middle of my private.  He was hurting or he was breathing hard, and then it continues to the other, in my ear.  He pulled down my pants further, but I kept squirming.  Another time he had whispered in my ear to come to his room.  He kept calling, so I went to see what he wanted.  He had me lay down on the side of the bed with my feet propped up in the supine lithotomy position. He got between my legs and pulled down my pants a little.  And I saw him unbutton his.  I turned my head and looked at the TV.  All of a sudden I felt something warm, like he had peed on me.  And it felt hard like a rock.  He kept pressing himself down on top of me.  At first it was felt on top of my private, then it slipped down and it hurt then.  He put his tongue in my mouth. He did this multiple times, more than ten.  He would raise up my shirt and lick my boobs.  There was some white stuff on my panties.  I would say don't and tell him to stop, but he would say just a little longer and hush me up.

Hammer testified that this information is included in the report for the following reasons:  (1) to determine the type of penetration so she knows what type of injuries to look for, and (2) to find out if the patient is in a safe environment or requires protection.

Later in the trial, Monica testified that the appellant began abusing her when she was eleven years old and she described the first time in detail:

> He had came [sic] home; and he was out drinking with his friend, Joe.  And I saw my grandma get up because I woke up.  He asked her if he could lay on the bed with me, my cousin Hailey, and her.  And she's like yeah, lay over there by Boobie, that's what they -- she called me.  And so he got on the bed, and then he started like rubbing on me.  And I was like no, no; and I thought he was playing around or something, so I was like move.  And then he started like trying to put his hands in my pajama pants, and so I was like stop, move.  I'm about to go get on the couch with Elexis.  He was like dog, get over here.  I was like no, stop, move.  And my grandma she was the one that turned the other way, and she was asleep.  And like he started like just rubbing my butt first, and then he had pulled me close, and he started touching on my private.  And he's like put his hands

–7–

inside my pants, and he's was playing around with his fingers on my privates, and in the front.

During Monica's testimony, she described the other encounters with appellant in similar detail and that he would touch her every time she went to his house.

### 2. Analysis

#### i) Rule of Evidence 802 analysis

Hearsay is not admissible except as provided by statute, the rules of evidence, or by other rules prescribed under statutory authority. TEX. R. EVID. 802. Once the opponent of hearsay evidence makes the proper objection, it becomes the burden of the proponent of the evidence to establish that an exception applies that would make the evidence admissible in spite of its hearsay character. *Taylor v. State,* 268 S.W.3d 571, 578-79 (Tex. Crim. App. 2008). There are numerous exceptions to hearsay, including an exception for statements that are made for, and are reasonably pertinent to, a medical diagnosis or treatment. TEX. R. EVID. 803(4). This exception is based on the assumption that the patient understands the importance of being truthful with the medical personnel involved to receive an accurate diagnosis or treatment. *Franklin v. State*, 459 S.W.3d 670, 676 (Tex. App.—Texarkana 2015, pet. ref'd). In this instance, Hammer testified that the patient history section of the report was essential to determine the type of injuries to look for and to find out if the patient was in a safe environment or required protection. Hammer further testified that she spoke with Monica about the need to be truthful, open and honest during the exam so that she could determine what treatment was needed. Accordingly, we conclude that the trial court did not abuse its discretion in finding that the statements were admissible under Rule 803(4).

### ii) Confrontation Clause *Crawford* analysis

Appellant also asserts that the evidence should have been excluded based upon the confrontation clause as interpreted in *Crawford*.[4] We disagree. The Confrontation Clause of the Sixth Amendment, applicable to the states through the Fourteenth Amendment, provides that, "[i]n all criminal prosecutions, the accused shall [have the right] to be confronted with the witnesses against him." U.S. CONST. amend. VI; *see Pointer v. Texas,* 380 U.S. 400, 403 (1965). In *Crawford*, the Supreme Court held admission of a hearsay statement made by a non-testifying declarant violates the Sixth Amendment if the statement was testimonial and the defendant lacked a prior opportunity for cross-examination. *Wall v. State*, 184 S.W.3d 730, 734 (Tex. Crim. App. 2006). A statement is "testimonial" if it is a "solemn declaration" made for the purpose of establishing some fact. *See Crawford,* 541 U.S. at 51; *In re M.H.V.-P.*, 341 S.W.3d 553, 557 (Tex. App.—El Paso 2011, no pet.). A statement is more likely to be testimonial if the person who heard, recorded, and produced the out-of-court statement at trial is a government officer. *See Davis v. State*, 169 S.W.3d 660, 667 (Tex. App.—Austin 2005), *cert. denied*, 549 U.S. 1344 (2007).

Generally speaking, a hearsay statement is "testimonial" when the surrounding circumstances objectively indicate that the primary purpose of the interview or interrogation is to establish or prove past events potentially relevant to later criminal prosecution. *Davis v. Washington,* 547 U.S. 813, 822–23 (2006); *De la Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008). As stated above, the statements at issue were provided to a nurse for the purpose of medical treatment, not to further a criminal prosecution. Thus, the statements cannot be considered testimonial in nature. Further, the declarant of the out-of-court testimonial evidence, Monica, later testified at trial and appellant cross-examined her. As the report did not contain

---

[4] We note that although appellant raised these issues, appellant failed to brief these arguments.

testimonial statements and appellant had the opportunity to cross examine Monica, we conclude that trial court did not abuse its discretion in overruling the confrontation clause or *Crawford* objection.

### iii)     Rule of Evidence 403

Appellant next argues that even if the evidence was relevant, its probative value was more prejudicial than probative.  Again, we disagree.  There is a presumption that relevant evidence will be more probative than prejudicial.  *See Santellan v. State*, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997).  Rule 403, however, allows for the exclusion of relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence.  TEX. R. EVID. 403.  In this case, even if we had concluded that the trial court erroneously admitted the evidence, appellant's substantial rights were not affected.  *See* TEX. R. APP. P. 44.2(b).  The court of criminal appeals has determined that substantial rights are not affected by the erroneous admission of evidence "if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect."  *See Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).  Here, any alleged error resulting from the admission of the report is harmless because Monica later testified about the sexual abuse described in the report.  Accordingly, we overrule appellant's second issue.

## III. CONCLUSION

We resolve appellant's issues against him and affirm the trial court's judgment.

/ David Evans/
DAVID EVANS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
150032F.U05



## Court of Appeals
## Fifth District of Texas at Dallas
### JUDGMENT

PEDRO SEGURA, JR., Appellant

No. 05-15-00032-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 422nd Judicial District Court, Kaufman County, Texas
Trial Court Cause No. 14-00572-422-F.
Opinion delivered by Justice Evans.
Justices Whitehill and Schenck participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered this 8th day of December, 2015.