# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-21-00621-CR

---

**Antonio Perez, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE 368TH DISTRICT COURT OF WILLIAMSON COUNTY**
**NO. 20-1152-K368, THE HONORABLE BURT CARNES, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Appellant Antonio Perez was convicted of aggravated sexual assault of a child and sentenced to sixteen years' imprisonment. Tex. Penal Code §§ 12.32, 22.021. In his sole issue on appeal, Perez alleges that the trial court erred by allowing hearsay testimony of the sexual assault nurse examiner (SANE) on the grounds that her testimony did not qualify under the exception for medical diagnosis or treatment because her nursing license had lapsed at the time she examined the child victim. *See* Tex. R. Evid. 801, 802, 803(4). Upon review of the record, we have found non-reversable error on the trial court's written judgment of conviction. Based on the reasons stated below, we modify the judgment to correct the error and affirm the trial court's judgment as modified.

## BACKGROUND

Perez was living with his son's family in Florence, Texas, at the time of the offense. Perez is the paternal grandfather of the victim, A.P., who was nine years old at the time. On the evening of May 6, 2020, Perez's son, who is A.P.'s father, was preparing to put his children to bed when he heard his father ask A.P., "why was she not the same as she always was with him," and "why wouldn't she kiss him the same way that she used to kiss him?" He also heard Perez tell A.P. "not to betray him ever and that he will always be there for her." A.P.'s father told Perez to go to bed because he was drunk. A.P.'s father then asked the crying A.P. what had happened. A.P. did not want to tell him, and so A.P.'s father told his wife what he had heard. A.P's mother went to A.P.'s room and asked what happened. While still crying, A.P. said she did not want Perez to get in trouble, but when encouraged to tell what happened, A.P. said that Perez had been touching her. Both parents had all four of their children stay in their room that night with the door locked. The next morning, the parents called the police. They then took their three oldest children—L.P., A.P., and S.P.—to the Children's Advocacy Center. The three children met individually with a nurse and were interviewed by a police officer. After Perez was arrested, A.P. asked where her grandfather was, and her father told A.P. that her grandfather had moved away. A.P. then became "so happy" and threw away all her photographs of her grandfather.

Allison Dubose was the SANE that met with A.P. After asking A.P.'s mother about A.P.'s medical history, she took A.P. to a forensic exam room. Dubose testified that both the exam room and the beginning of the exam were similar to a pediatrician visit. The room included an exam table and "fun pictures" on the wall. Dubose took A.P.'s vitals and measured her height and weight, before asking her questions about what happened. When Dubose asked,

"if anyone had hurt her anywhere on her body," A.P. responded, "just my grandpa." When asked, "where on her body he hurt her," A.P. said, "he touches my private parts." A.P. told Dubose that Perez touched her with his hands and mouth "a little bit of times" at both their old house and new house when no one else was present and always in Perez's bedroom. A.P. also told Dubose that her clothes were on but pushed aside by Perez when he used his hands, and that her pants and underwear were off when he used his mouth. A.P. told Dubose the touching was on the "inside" and responded affirmatively when asked if there was pain. A.P. also told Dubose that the touching started when she was eight years old, that the last time was the previous day, and that Perez used his fingers more than his mouth. Dubose then did a "head-to-toe" exam to check for any injuries, which she did not find.

Dubose had been a nurse for about ten years at the time she examined A.P. Dubose had obtained her SANE nurse certification, but at the time she examined A.P., Dubose's nursing license had lapsed. Although she had completed the required hours to renew her license, she had not submitted her renewal application nor paid her renewal fee. About three months after examining A.P., Dubose realized her license had lapsed. She submitted her application, paid the required fees, and was soon licensed again.

Perez consented to a search of his cell phone. Upon opening the unlocked phone, Detective Johnny Guerra immediately saw on the full screen of the phone, "a picture of [A.P.] laying on the couch with her legs spread open in her underwear." After backing out of the main photo, he found "a bunch of other thumbnails of [A.P.] in similar positions."

A.P., who was ten years old at the time of the trial, testified that her parents were working all the time and that she spent a lot of time with her grandfather. She said she was there because her grandpa touched her "in private." When asked what she meant by "private," she

3

pointed between her legs. She also testified that the first time her grandfather put his hand inside her underwear and touched her inside of "that part" was in the living room at her old house and that "it felt terrifying." She testified that her grandfather also touched her in the same way and the same spot while in his bedroom of her new house. She did not remember him touching her with anything other than his hand. A.P. testified that the first person she told was her mom, but she could not remember why her mom had asked about what was happening with her grandfather. A.P. also did not remember her father coming into the room while she was with her grandfather. A.P. testified that after she told her mom, they went to a place to tell someone what happened. A.P. testified that she was told at that place that the most important thing was to tell the truth, that she understood that, and that is what she did.

## DISCUSSION

In his sole issue on appeal, Perez contends that the trial court erred by allowing the SANE to testify about hearsay statements by A.P. because the statements do not qualify under the medical diagnosis or treatment exception. Specifically, Perez argues that A.P.'s statements were not made for the purpose of medical diagnosis or treatment because the SANE had an expired license at the time she examined A.P. and therefore could not legally diagnose or treat a patient.

We review a trial court's ruling regarding the admission or exclusion of evidence, including under an exception to the hearsay rule, for an abuse of discretion. *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008). Under that standard, we will only reverse a trial court's ruling if it is so clearly wrong as to lie outside "the zone of reasonable disagreement." *Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002); *see also Taylor*, 268 S.W.3d at 579. Moreover, the ruling will be upheld if it "is reasonably supported by the record and is correct

4

under any theory of law applicable to the case." *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005).

Hearsay is a statement that "the declarant does not make while testifying at the current trial or hearing" and that "a party offers in evidence to prove the truth of the matter asserted in the statement." Tex. R. Evid. 801. Hearsay is inadmissible unless otherwise provided by rule or statute. *Id.* R. 802. However, statements made for medical diagnosis or treatment may qualify under a hearsay exception regardless of whether the declarant is available as a witness. *Id.* R. 803(4). Specifically, a statement that "is made for—and is reasonably pertinent to—medical diagnosis or treatment" and "describes medical history; past or present symptoms or sensations; their inception; or their general cause," are not excluded by the hearsay rule. *Id.*

The "essential 'qualification'" of this rule focuses on the declarant's belief that the information in the statement is for the purpose of diagnosis or treatment of a condition. *See Taylor*, 268 S.W.3d at 587. It is the selfish motive to be truthful to receive proper treatment that can be trusted. *Id.* "[A] child's statements to a physician or other health care professional describing sexually abusive acts and identifying the abuser can be admissible under rule 803(4)." *Barnes v. State*, 165 S.W.3d 75, 82 (Tex. App.—Austin 2005, no pet.).

The assumption that someone seeking medical treatment will tell the truth may not always apply to children because they may not fully understand the need to be truthful when speaking to a physician. *See Barnes*, 165 S.W.3d at 82. However, courts may infer that a child had an awareness of such importance to tell the truth based on the setting. *See Taylor*, 268 S.W.3d at 589. In *Taylor*, the Court noted that some situations, such as in an emergency room immediately after an injury or "on the physician's cold examination table in the interest of

diagnosing and curing some exigent disease or ailment," can make it "only natural to presume that adults, and even children of a sufficient age or apparent maturity, will have an implicit awareness that the doctor's questions are designed to elicit accurate information and that veracity will serve their best interest." *Id.*; *see also Franklin v. State*, 459 S.W.3d 670, 677 (Tex. App.— Texarkana 2015, pet. ref'd) ("[U]nlike statements made to non-medical professionals, which require affirmative evidence in the record on the issue of veracity, courts can infer from the record that the [child] victim knew it was important to tell a SANE the truth in order to obtain medical treatment or diagnosis.").

Here, A.P. was told at the Children's Advocacy Center—and she testified at trial she understood—that it was important for her to tell the whole truth. On the day after the offense occurred, she was examined by a nurse in an exam room of a medical facility set up to look like a pediatrician's office, and she was given routine medical tests before being asked about what happened. A.P. was nine years old during the medical exam. Based on these facts, we conclude that the trial court did not abuse its discretion by concluding that A.P. understood the importance of being truthful when making a statement to the SANE and that her statements were reasonably pertinent to diagnosis or treatment. *See Taylor*, 268 S.W.3d at 589; *Barnes*, 165 S.W.3d at 83. A.P. was not aware that Dubose was not currently licensed as a nurse. Dubose's lapsed nursing license does not affect A.P.'s understanding of the situation or the purpose of the exam. The trial court did not abuse its discretion by allowing the SANE to testify regarding A.P.'s statements under Rule 803(4). *Cf. Taylor*, 268 S.W.3d at 587 (rejecting argument "that before a witness can relate the out-of-court statement made for purposes of medical diagnosis or treatment under Rule 803(4), the witness must be shown to have medical 'qualifications'" and explaining that "[a] declarant's statement made to a non-medical professional under circumstances that show he

expects or hopes it will be relayed to a medical professional as pertinent to the declarant's diagnosis or treatment would be admissible under the rule, even though the direct recipient of the statement is not a medical professional"); *Gregory v. State*, 56 S.W.3d 164, 183 (Tex. App.—Houston [14th Dist.] 2001, pet. dism'd) (explaining that if statement is made to another for purpose of medical treatment, person to whom statement is made does not necessarily have to be medical person). We overrule Perez's sole issue on appeal.

Although Perez does not raise this issue on appeal, we note that there is a clerical error in the judgment of conviction requiring correction. The judgment in this case mistakenly states that Perez pleaded guilty to the charged offense. However, the record establishes that he pleaded not guilty. Thus, we modify the judgment to reflect that Perez pleaded not guilty. *See* Tex. R. App. P. 43.2(b) ("The court of appeals may . . . modify the trial court's judgment and affirm it as modified."); *Bigley v. State*, 865 S.W.2d 26, 27 (Tex. Crim. App. 1993) (acknowledging court of appeals' authority to reform judgments.).

## CONCLUSION

Because we overrule Perez's sole issue, we affirm the trial court's judgment of conviction as modified.

_____

Gisela D. Triana, Justice

Before Chief Justice Byrne, Justices Triana and Smith

Affirmed as Modified

Filed:   March 29, 2023

Do Not Publish