# In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

### NO. 09-16-00495-CR
_____

### GALEN DWAYNE BAUGUS, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 221st District Court**
**Montgomery County, Texas**
**Trial Cause No. 14-07-08281-CR**

## MEMORANDUM OPINION

After the guilt-innocence phase of his trial, a jury found Galen Dwayne Baugus guilty of sexually assaulting Mary,[1] a child. *See* Tex. Penal Code Ann. § 22.021(a)(1)(B) (West Supp. 2017). After a punishment hearing, the jury found that

---

[1] We refer to the child the jury found Baugus guilty of assaulting with a pseudonym, to conceal the child's identity. *See* Tex. Const. art. I, § 30 (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process).

1

Baugus had been previously convicted of sexual assault, a finding that resulted in Baugus receiving a mandatory life sentence. *See* Tex. Penal Code Ann. § 12.42(c)(2)(B)(ii) (West Supp. 2017). In the first five issues in Baugus's appeal, he contends the trial court abused its discretion: (1) by denying his motion for continuance; (2) by admitting extraneous offense evidence which he contends violated his right to due process; (3) by admitting extraneous offense evidence, which he argues was unfairly prejudicial; (4) by allowing a psychologist to testify about the statistical occurrence of false allegations in sexual abuse cases involving children; and (5) by allowing a witness, Mary's treating counselor, to be in the courtroom when Mary and an expert witness testified during his trial. In a sixth issue, Baugus argues that the evidence admitted in his trial fails to support the jury's finding of guilt. We conclude that Baugus's issues are without merit, and we affirm the trial court's judgment.

## Motion for Continuance

In his first issue, Baugus argues the trial court erred by denying his motion for continuance. We review rulings on motions seeking continuances using an abuse-of-discretion standard. *See Gallo v. State*, 239 S.W.3d 757, 764 (Tex. Crim. App. 2007). To establish that the trial court abused its discretion by denying his motion, Baugus must prove "both that the trial court erred in denying the motion and that the

2

lack of a continuance harmed him." *Gonzales v. State*, 304 S.W.3d 838, 843 (Tex. Crim. App. 2010). Ordinarily, to create a record sufficient to show that a lack of a continuance harmed the defense, the defendant will need to move for new trial if the record of the trial does not show how the defendant was harmed by the trial court's ruling on the defendant's motion. *Id.* In a post-trial hearing on a post-trial motion, the defendant can attempt to establish a record showing how the trial court's failure to continue the case prejudiced the defense. *Id.* Put simply, the record from the trial court must show "specific prejudice" so that the appellate court can determine whether an abuse of discretion occurred. *See Renteria v. State*, 206 S.W.3d 689, 699 (Tex. Crim. App. 2006).

Baugus filed a sworn motion for continuance seven days before his trial began. In his motion, Baugus alleged that his DNA expert could not fully evaluate a DNA report created by the Department of Public Safety's crime lab because the Department had failed to produce all the underlying data supporting the statements contained in its report. Baugus first brought the trial court's attention to his motion in a pretrial hearing, three days before the trial began. During that hearing, the parties explained that the Department's DNA report excluded Baugus as having contributed DNA to the objects the State's investigators determined might be relevant and had tested during the investigation of Baugus's case. The attorneys for the parties also

3

informed the trial court that the DNA testing performed on the front seat of Baugus's truck, where Mary claimed she had been sitting when Baugus allegedly assaulted her, had been negative for the presence of Mary's DNA. Nonetheless, the DNA report also shows that mixed DNA profiles were obtained from other objects the State's investigators tested, Mary's robe and the interior of Baugus's truck. The DNA extracted from the samples associated with Baugus's truck excluded Mary as having contributed to the DNA profiles obtained from Baugus's truck. The report also excluded Baugus as having contributed DNA to the DNA mixture extracted by the State's forensic scientists from Mary's robe.

The trial court denied Baugus's motion to continue, and the State called its first DNA witness, Kristi Wimsatt, four days later. During the trial, Wimsatt testified about the procedures generally used in collecting DNA samples. For example, she explained that "for touch DNA, it wouldn't be unusual to not get a profile or to get an inconclusive result or to get a profile. Those are all possibilities as potential results with touch DNA." One of Baugus's attorneys then cross-examined Wimsatt, establishing that Wimsatt had not reviewed any of the DNA evidence in Baugus's case.

In his appeal, Baugus must establish that the trial court's decision to deny his motion for continuance harmed his defense. *See Gonzales*, 304 S.W.3d at 843. In his

motion to continue, Baugus argued that he needed additional time so that his expert witness could obtain and review the underlying data the Department's forensic scientists used in formulating the DNA report that was produced by the State. In the hearing on the motion, Baugus's attorney argued that although Baugus's consulting expert had reviewed the DNA report, Baugus needed the missing data to allow his consulting expert to help the defense prepare to cross-examine the State's witnesses.

On appeal, Baugus argues he was prejudiced when the trial court refused to continue the case because his consulting expert did not have all the data the Department had used when formulating its DNA report. In his brief, Baugus acknowledges that "it is unknown what information might have been gleaned from the independent expert's review of the DNA files." Baugus's argument that he was prejudiced relies on the transcript of the pretrial hearing, as Baugus did not file a motion for new trial. Although we have reviewed the testimony of the DNA experts who testified in Baugus's trial, none addressed whether the missing data might have been significant in Baugus's defense. Baugus's expert did not testify, and Baugus did not file a post-trial motion to supplement the trial record to support his claim that the lack of a continuance prejudiced his defense. Thus, we cannot determine what recommendations Baugus's expert might have made had the State given Baugus all the data the State's forensic scientists used in creating the DNA report.

Essentially, nothing in the testimony from Baugus's trial or the arguments made to the jury in summation suggest that Baugus's attorneys failed to appreciate the significance of the DNA report. Nor does the record show that Baugus's attorneys failed to appreciate how the DNA report could be used to support Baugus's defense. Baugus's attorney elicited testimony from the DNA witnesses that the DNA report excluded Baugus as a person who contributed DNA to the profiles on the swabs that were linked to Mary's robe, and emphasized the fact that the DNA report excluded Mary as having contributed her DNA to the DNA profiles that were linked to the swabs the police obtained from the cabin of Baugus's truck. On this record, it is unclear how the missing DNA evidence could have assisted Baugus's defense, and nothing in the record shows how Baugus's attorneys might have used the missing data in a way that might have further assisted the defense. On this record, we conclude the record fails to show that the trial court abused its discretion by denying Baugus's motion or that the lack of a continuance prejudiced his defense. *See id*. We overrule Baugus's first issue.

Evidence of Other Crimes

In issue two, Baugus contends the trial court erred, in the guilt phase of his trial, by admitting evidence related to a sexual assault that Baugus committed in

2003 against another child, Carla.[2] Baugus argues that the admission of Carla's testimony about the prior sexual assault violated his constitutional rights, and that the probative value of Carla's testimony about the 2003 alleged sexual assault was more prejudicial than probative.

The trial court held a hearing outside the jury's presence to determine whether to admit Carla's testimony during the guilt-innocence phase of Baugus's trial. *See* Tex. Code Crim. Proc. Ann. art. 38.37 (West 2018). In the hearing, Baugus objected that Carla's testimony would be "substantially more prejudicial than it is probative." The trial court advised that it would rule on the objection should the State call Carla to testify in Baugus's trial. When the State called Carla, Baugus renewed his objection, but the trial court overruled it. *See* Tex. R. Evid. 403. Although Baugus suggests that admitting Carla's testimony violated his constitutional rights, the transcript from the trial does not show that Baugus ever objected that admitting Carla's testimony would violate his constitutional rights. *See generally* U.S. CONST.

---

[2] We refer to this witness with a pseudonym, which we have designed to conceal the witness's identity since the witness was sixteen when Baugus sexually assaulted her. *See* Tex. Const. art. I, § 30 (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process).

amends. V, XIV; Tex. Const. art. I, § X; Tex. Code Crim. Proc. Ann. art. 1.04 (West 2005).

The State contends that Baugus seeks to raise his constitutional complaints about Carla's testimony without having first objected during trial that admitting her testimony would violate his constitutional rights. We agree that the constitutional error claim Baugus seeks to raise for the first time on appeal was not properly preserved for our review.

Preservation of error is a systemic requirement, which appellate courts must consider in deciding whether an issue is preserved for appeal. *Darcy v. State*, 488 S.W.3d 325, 327 (Tex. Crim. App. 2016). To secure a defendant's right to appellate review, the Texas Rules of Appellate Procedure require that the record show the party complaining about an alleged error "stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context[.]" Tex. R. App. P. 33.1(a)(1)(A). And, the party complaining on appeal about error must establish that the trial court ruled on the party's request, objection, or motion, either expressly or implicitly, or that the complaining party objected to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2). When the defendant's complaint concerns an alleged violation of the defendant's constitutional rights, the

defendant must give the trial court "the chance to rule on the specific constitutional objection because it can have such heavy implications on appeal." *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012). To preserve constitutional arguments claiming error for appellate review, the rules of error preservation apply even when a party is claiming that a statute is facially invalid. *See Alvarez v. State*, 491 S.W.3d 362, 368 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd) (overruling facial constitutional challenge to article 38.37 of the Texas Code of Criminal Procedure).

The trial court advised the parties that it was admitting Carla's testimony about the 2003 assault for two reasons, that Baugus's attorneys had "somewhat opened" the door to the testimony and because Carla's testimony was admissible under article 38.37 of the Texas Code of Criminal Procedure. Generally, article 38.37, section 2(b) allows trial courts to admit evidence that a defendant committed a separate offense in the trial of a sexual assault case when the alleged victim of the offense being tried is a child. Tex. Code Crim. Proc. Ann. art. 38.37, § 2(b) (West 2018).

On appeal, Baugus argues that admitting Carla's testimony violated his constitutional rights to have an impartial jury, infringed on the presumption of

innocence, and lowered the State's burden of proof.[3] However, because Baugus failed to raise his constitutional claims about the admission of Carla's testimony while he was in the trial court, he failed to preserve his right asserting that error on these grounds in his appeal. *See Saldano v. State*, 70 S.W.3d 873, 889 (Tex. Crim. App. 2002) (holding that the defendant's failure to object to evidence in a timely and specific manner during trial forfeits complaints about its admissibility, even if the alleged error concerns a defendant's constitutional rights). We overrule issue two.

In issue three, Baugus argues that the trial court abused its discretion by admitting Carla's testimony over his objection that Rule 403 of the Texas Rules of Evidence rendered the testimony inadmissible. Rule 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Tex. R. Evid. 403. When conducting a Rule 403 analysis, the trial court must balance:

> (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the

---

[3] We note that in *Holcomb v. State*, No. 09-16-00198-CR, 2018 WL 651228, at *2 (Tex. App.—Beaumont Jan. 31, 2018, pet. ref'd) (mem. op., not designated for publication), we rejected an argument challenging the facial validity of article 38.37.

evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006). "[T]here is a presumption that relevant evidence is more probative than prejudicial." *Santellan v. State*, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997).

We review the trial court's ruling for abuse of discretion; consequently, we must determine whether the trial court's decision to admit the testimony was reasonable given all the relevant facts. *See Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App. 2006). In Baugus's case, the State presented evidence about the 2003 sexual assault through two witnesses, Carla, and the sexual assault nurse who treated Carla on the night the sexual assault occurred. Baugus argues the 2003 assault was so remote that the assault against Carla had little probative value in determining whether Baugus assaulted Mary in 2014. Baugus also contends the circumstances involving the 2003 assault against Carla were unlike the facts relevant to Mary's claim that he assaulted her. He also argues that Carla was not a credible witness because she had previously been convicted of a felony. According to Baugus, the State could have proven that he assaulted Mary without using the testimony relevant to the assault he committed against Carla. Baugus contends that the evidence about the assault against Carla was particularly prejudicial because his attorney informed

11

the jury in opening statement "my client, [Galen] Baugus, was on a sex offender probation at the time [Mary claimed that Baugus assaulted her]."

In response, the State argues that the evidence that Baugus sexually assaulted Carla was relevant to whether he sexually assaulted Mary. According to the State, Baugus's "primary defensive theory at trial was that [Mary] fabricated the allegations of abuse, so [Baugus's] propensity to sexually assault children was highly probative in determining [Mary's] credibility." The State contends that it needed Carla's testimony because it had no medical or physical evidence to support Mary's testimony that Baugus sexually assaulted her. Finally, the State argues that the trial court limited the potential that Carla's testimony might be unfairly prejudicial by instructing the jury that it could consider Carla's testimony only if the jury found that Baugus, beyond a reasonable doubt, committed that offense, and that it could only consider Carla's testimony "in determining the motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident" in connection with the alleged offense against Mary "and for no other purpose."

The State's presentation of the evidence that Baugus assaulted Carla consumed around fifty pages of a ten-volume reporter's record. The offense against Carla occurred when she was a teenager, whereas Mary was nine when she claimed that Baugus assaulted her. In that regard, the trial court could have reasonably

12

considered Carla's testimony to be relevant based on the State's need to counter Baugus's claim that Mary was lying about whether he had assaulted her. The trial court could also have reasonably determined that the State had a significant need to show that Baugus assaulted Carla because it had no medical evidence or DNA evidence that supported Mary's claim. The testimony relevant to the assault that Baugus committed against Carla was neither confusing nor technical, and it did not require a large amount of time to present. The instruction the jury received in the charge, limiting the manner in which the jury could consider the testimony about the 2003 assault, reduced any risk that admitting evidence about the 2003 assault might have unduly prejudiced Baugus's right to have the jury consider the evidence only for whatever value the jury wanted to give it in deciding whether Baugus assaulted Mary. Finally, the trial court allowed Baugus's attorney to ask Carla whether she had previously been convicted of a felony, and she admitted to the conviction when she testified during the trial.

Considering all the relevant factors, we conclude that Baugus failed to demonstrate that admitting Carla's testimony violated Rule 403. *See Gigliobianco,* 210 S.W.3d at 641-42; *see also* Tex. R. Evid. 403. Thus, the trial court did not abuse its discretion when it admitted the testimony about Carla's assault. We overrule issue three.

13

Expert Testimony

In issue four, Baugus claims the trial court abused its discretion by allowing a clinical psychologist, Lawrence Thompson Jr., to testify about characteristics often seen in cases involving the sexual abuse of children. Before admitting expert testimony, the trial court must find: "(1) the witness qualifies as an expert by reason of his knowledge, skill, experience, training, or education; (2) the subject matter of the testimony is an appropriate one for expert testimony; and (3) admitting the expert testimony will actually assist the fact-finder in deciding the case." *Rodgers v. State*, 205 S.W.3d 525, 527 (Tex. Crim. App. 2006). The trial court "has great discretion in determining whether a witness possesses sufficient qualifications to assist the jury as an expert on a specific topic in a particular case." *Id.* at 528. In evaluating the reliability of expert testimony in fields of study outside the hard sciences, the court considers: (1) whether the field of expertise is a legitimate one, (2) whether the subject matter of the expert's testimony is within the scope of that field, and (3) whether the expert's testimony properly relies on the principles involved in the expert's field. *Morris v. State*, 361 S.W.3d 649, 654 (Tex. Crim. App. 2011). A field of expertise need not incorporate a scientific study or empirical data. *Id.* at 655.

Before Thompson testified, the trial court allowed Baugus's attorneys to examine Thompson about the underlying facts supporting his opinions. *See* Tex. R.

Evid. 705(b). The trial court conducted the hearing outside the presence of the jury, and Thompson stated that he has been a licensed psychologist since 2001, that he holds a doctorate in clinical psychology, and that, for the past sixteen years, he has worked for the Harris County Children's Assessment Center as the director of therapy and psychological services. Thompson's duties for the Center include counseling sexually and physically abused children, providing therapy and crisis intervention, testifying in court, training others in treating sexual abuse, and overseeing the work of twenty-five other master and doctoral level professionals, who provide therapy at the Center. During the hearing, Thompson agreed that he had not provided any services to Mary. Thompson explained that he was familiar with the characteristics generally seen in children who have been sexually abused. According to Thompson, his opinions about the characteristics that are typical of children in this group are generally accepted in his field. Thompson testified that he had published a peer-reviewed research project in 2015, but when Baugus's attorney asked Thompson if he was familiar with several articles and specific books about grooming and sexual abuse, Thompson stated that he was not familiar with them. Thompson also acknowledged that he could not recall the title of the article that he recently published.

When the hearing ended, the trial court found that Thompson was qualified to testify as an expert about characteristics often seen in children who have been sexually abused. *See* Tex. R. Evid. 702. On appeal, Baugus concedes that Thompson often testifies as an expert on child abuse, and that "on paper, Thompson presents as a qualified expert in the area of child sexual abuse." Nevertheless, Baugus argues that the trial court abused its discretion by allowing Thompson to testify in Baugus's trial because he failed to show that he was familiar with the publications that Baugus's attorney asked Thompson about during the preliminary hearing, and because he could not recall the title of the article that he published in 2015.

In part, Baugus challenges Thompson's expertise because he failed to demonstrate that he was familiar with the publications that Baugus's attorney asked him about in the preliminary hearing. Yet, an expert need not show he has read and can recall the title of every book or article published in his field to qualify as an expert. Here, no evidence was admitted showing that the articles Baugus's attorney mentioned were well-known in the field of psychology, or to establish that most experts in child abuse would be familiar with the articles mentioned during cross-examination. Thus, the trial court could have reasonably determined that Thompson's professional qualifications and his sixteen years of experience working at the Center with sexually abused children qualified him through his training and

16

experience to provide testimony that would help the jury understand why children sometimes generally fail to immediately report they have been sexually abused. *See* Tex. R. Evid. 702. Moreover, Baugus tested Thompson's credentials and familiarity with literature in his field before the jury when Thompson testified. With the benefit of the cross-examination, the jury was in the best position to weigh whether it thought Thompson's testimony was helpful.

Baugus also complains that the trial court abused its discretion by "allowing Thompson to quantify the occurrence of false allegations in child sexual abuse [cases]." When Thompson testified, the prosecutor asked Thompson: "Now, with regard to false allegations, based on your clinical experience, how often does a child make a false allegation?" Baugus objected, "This witness has just said he doesn't do research." The State argued that Baugus had opened the door to the line of questioning and that the question concerned Thompson's clinical experience. The trial court stated that it would allow the witness to answer the question if, through his clinical experience or through studies or literature, he was familiar with the frequency of false outcries. After the trial court overruled Baugus's objection, Thompson testified that, based on his clinical experience, children make false allegations involving abuse rarely. He then estimated that false outcries had occurred in less than three percent of his cases.

In his brief, Baugus argues that the trial court should not have allowed Thompson to express an opinion on whether children claiming they are sexually abused are generally truthful because the subject was solely within the province of the jury. *See Yount v. State*, 872 S.W.2d 706, 712 (Tex. Crim. App. 1993). However, Baugus objected to Thompson's testimony on the basis that as a clinician, Thompson had not done research on the subject. The argument that Baugus presents in his brief, that Thompson's testimony about whether children claiming to have been sexually abused are generally truthful was a matter that invaded the province of the jury is inconsistent with the objection that Baugus raised at trial.

It is well-settled law that "[i]f a trial objection does not comport with arguments on appeal, error has not been preserved." *Thomas v. State*, 505 S.W.3d 916, 924 (Tex. Crim. App. 2016). We hold that the complaint Baugus raises in his brief claiming that Thompson's testimony invades the province of the jury was not preserved for our review. We overrule Baugus's complaints in issue four.

## Excluding Experts from the Courtroom

In issue five, Baugus argues the trial court violated the exclusionary rule, which requires trial courts to exclude witnesses from the courtroom when other witnesses testify. *See* Tex. R. Evid. 614 ("At a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony."). Rule 614

requires trial courts to exclude witnesses from being in the courtroom when other witnesses testify, but the rule does not authorize trial courts to exclude some witnesses from the courtroom, including "a person whose presence a party shows to be essential to presenting the party's claim or defense[.]" Tex. R. Evid. 614(c).

On the second day of the trial, the prosecutor asked the trial court to allow Jacy Palmitier, a licensed professional counselor who treated Mary, to be in court while Mary and Thompson testified. Baugus asked that the trial court enforce Rule 614, and to exclude Palmitier from the courtroom while Mary and Thompson testified. The trial court overruled the objection.

A trial court may determine that an expert's presence in the courtroom is essential to a party's case when the expert plans to base her opinion on the evidence that is offered during trial. *See Martinez v. State*, 867 S.W.2d 30, 40 (Tex. Crim. App. 1993). That said, the mere assertion that a party's witness will be testifying as an expert is insufficient to establish that the witness's presence in the courtroom is essential to a party's ability to present its case. *See Franklin v. State*, 459 S.W.3d 670, 680-81 (Tex. App.—Texarkana 2015, pet. ref'd).

In its brief, the State has not argued that the trial court could have reasonably found that Palmitier's presence in court while Mary and Thompson testified was essential to the State's case. Nonetheless, violations of Rule 614 are treated as non-

constitutional error, meaning that the appellate court must disregard the error unless it affected the defendant's substantial rights. Tex. R. App. P. 44.2(b); *see Wilson v. State*, 179 S.W.3d 240, 248 (Tex. App.—Texarkana 2005, no pet.) (explaining that a violation of Rule 614 requires an appellate court to determine if the error affected the defendant's substantial rights). An error does not affect a party's substantial right if we have "fair assurance that the error did not influence the jury or had but a slight effect." *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); *Allen v. State*, 436 S.W.3d 815, 824 (Tex. App.—Texarkana 2014, pet. ref'd) (analyzing the trial court's violation of Rule 614 under the standards governing non-constitutional error); *Mescher v. State*, No. 03-10-00517-CR, 2012 WL 2981104, at *2 (Tex. App.—Austin July 12, 2012, pet. ref'd) (not designated for publication) (same).

In his appeal, Baugus agrees that the trial court's error in allowing Palmitier to remain in the courtroom when others testified should be treated as non-constitutional error. Still, he argues that the error affected his substantial rights, suggesting that "Palmitier's testimony corroborated the testimony of the witnesses she observed, specifically [Mary's]."

After reviewing the entire record, we conclude that the trial court's error did not influence the jury's deliberations or if it did, it had only a slight effect. *See* Tex. R. App. P. 44.2(b). Palmitier based her testimony on records that Palmitier made

20

weekly while treating Mary in counseling. So, we have fair assurance on this record that Palmitier's testimony was not based on the testimony that she heard in court. We hold the trial court's error in allowing Palmitier to remain in the courtroom while Mary and Thompson testified was harmless. We overrule issue five.

*Jackson v. Virginia*

In issue six, Baugus contends the evidence admitted in his trial is insufficient to support his conviction for sexually assaulting Mary. But, the evidence before the jury included Mary's testimony that Baugus inserted his finger into her sexual organ. Baugus argues that the jury could not credit Mary's testimony about the sexual assault because the jury heard evidence from other witnesses indicating that Mary showed no signs of trauma or emotional distress for a period of twelve hours following the alleged assault. Nonetheless, the evidence before the jury included Mary's explanation for the twelve-hour delay, as she explained that she considered telling someone about the assault earlier, but she did not "want to ruin anybody's day." During the trial, Mary explained that she had feelings of embarrassment over the incident when it occurred, but that within minutes after going to bed that evening she decided to tell her grandmother she had been assaulted "so it wasn't bugging me." The jury was entitled to accept her explanation for her delayed outcry and her

21

testimony that Baugus inserted his finger into her sexual organ. *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013).

We review the sufficiency of the evidence to support a conviction under the standards set forth in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We view all the evidence admitted in the trial "in the light most favorable to the verdict and determine whether, based on the evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Anderson v. State*, 416 S.W.3d 884, 888 (Tex. Crim. App. 2013) (quoting *Jackson*, 443 U.S. at 318–19). We must keep in mind that "[t]he jury is the sole judge of credibility and weight to be attached to the testimony of witnesses." *Temple*, 390 S.W.3d at 360. In its role as the factfinder, the jury may choose to believe all, some, or none of the testimony that is presented to the jury by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). Additionally, the jury may draw multiple inferences from the evidence that is before it if the inferences it draws are reasonable and are supported by the evidence admitted in the defendant's trial. *Temple*, 390 S.W.3d at 360. If the record supports conflicting inferences, we must presume the jury resolved such conflicts in favor of its verdict, and we must defer to the jury's resolution of the dispute when the resolution it reached is supported by the evidence. *Id*. "Under this standard, evidence may be legally

22

insufficient when the record contains either no evidence of an essential element, merely a modicum of evidence of one element, or if it conclusively establishes a reasonable doubt." *Britain v. State*, 412 S.W.3d 518, 520 (Tex. Crim. App. 2013) (citing *Jackson*, 443 U.S. at 320).

A person commits the offense of aggravated sexual assault of a child if he intentionally or knowingly causes the penetration of the sexual organ of a child by any means if the victim is younger than fourteen. Tex. Penal Code Ann. § 22.021(a)(1)(B)(i), (2)(B) (West Supp. 2017). A conviction of a defendant on a charge of aggravated sexual assault can be affirmed based on the uncorroborated testimony of the child the jury found the defendant guilty of assaulting. *See* Tex. Code Crim. Proc. Ann. art. 38.07 (West Supp. 2017).

Here, Mary testified that she was nine years old when the assault occurred. Mary was eleven when the case was tried. During the trial, Mary provided detailed testimony about the physical aspects of the sexual assault and where it occurred. The evidence before the jury includes the testimony of one of the officers who investigated the alleged assault, and his testimony indicates that he corroborated details about the assault that were consistent with Mary's account, including where Mary went that day and that Mary was alone with Baugus in his truck on the morning of the assault. Viewing the evidence in the light most favorable to the prosecution,

we conclude the evidence before the jury allowed the jury to rationally find Baugus guilty of aggravated sexual assault. *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). Accordingly, we overrule issue six and affirm the trial court's judgment.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on March 13, 2018
Opinion Delivered August 15, 2018
Do Not Publish

Before McKeithen, C.J., Kreger and Horton, JJ.