

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-19-00053-CR

_____


CHRISTOPHER DAVID MCCARTNEY, Appellant

V.

THE STATE OF TEXAS, Appellee


On Appeal from the 71st District Court
Harrison County, Texas
Trial Court No. 16-0316X


Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

Christopher David McCartney appeals his convictions and sentences on five counts of aggravated sexual assault of a child,[1] A.M.,[2] complaining of admission of an examination report prepared by a sexual assault nurse examiner (SANE), admission of certain photographs, allowing a forensic interviewer to testify as an outcry witness, failing to include in the jury charge an instruction requiring jury unanimity as to a specific act of criminal conduct, and allegedly improper jury argument by the State. We affirm the trial court's judgment, because (1) the trial court did not err when it admitted the SANE report, (2) the trial court did not err when it admitted photographs of A.M.'s injuries, (3) any error regarding the proper outcry witness' statement was harmless, (4) the trial court's jury charge did not contain error, and (5) McCartney did not preserve his complaints regarding jury argument.

Nine-year-old A.M. testified that, when she was five and six years old, McCartney[3] "put his private part in [her] private part, [her] butt, and [her] mouth" regularly. A.M. said that McCartney did those things on more than one occasion and that it would happen in her mother's room, A.M.'s room, and the living room. A.M. explained that, during that time, she referred to McCartney's penis as "turtle." According to A.M., her two brothers were sometimes in the house when McCartney assaulted her. A.M. said it hurt her "private part" and her "butt" and that "a

---

[1]The trial court sentenced him to seventy-five years' imprisonment on each count, to run consecutively.

[2]We refer to the child by initials and the adults other than McCartney by fictitious names in order to protect the child's privacy. *See* TEX. R. APP. P. 9.10(a)(3).

[3]McCartney is A.M.'s stepfather, but A.M. referred to McCartney as "Daddy."

2

couple of times," she bled.[4]  A.M. said that McCartney would tell her that, if she told another person, "it would be worse next time . . . ."  According to A.M., McCartney would sometimes ejaculate and tell A.M. "to drink it," but "sometimes [she] would spit it out" in the toilet.  A.M. also explained that McCartney made her bend over the couch when he assaulted her.  A.M. testified that McCartney's long-time friend, John Jackson, also sexually assaulted her, both vaginally and orally.

Sharon Thomas testified that, on August 2, 2016, she received a telephone call from A.M.'s mother,[5] informing her of A.M.'s allegations of sexual abuse against McCartney.  According to Thomas, A.M. told her, "in [A.M.'s] own words[,]" what McCartney had done to her.  After speaking to an attorney about A.M.'s allegations, Thomas contacted her mother and informed her that she needed to bring A.M. to her so that Thomas could take her to the hospital for an examination.[6]  Thomas stated that she was present during the SANE examination and that she was aware of the SANE's conclusions.  Thomas also said that, from what she knew about A.M.'s allegations against McCartney, A.M. had consistently told the same version of events.  After leaving the hospital, A.M. stayed with Thomas and continued to live with her for approximately one year.[7]  Thomas stated that she took A.M. for a forensic interview at the Children's Advocacy

---

[4]A.M. also explained that, as a result of McCartney's actions, she would get rashes that were "red and sore" and that it would hurt when she used the bathroom.

[5]McCartney and Thomas have the same mother.

[6]A.M.'s grandmother also went to the hospital with A.M. and Thomas.

[7]Eventually, A.M. went to live with her great uncle and aunt in Mississippi.

Center (CAC). According to Thomas, A.M. continued with therapy at the CAC for about ten months.

McCartney testified that, on August 2, 2016, he was informed that his friend, Jackson, had sexually assaulted A.M. After hearing the allegations against Jackson, McCartney left the house around noon and spent the entire day fishing nearby.[8] After he returned home in the early morning hours of August 3, McCartney was met by a law enforcement officer, who explained that both he and Jackson had been accused of sexually assaulting A.M.[9] McCartney was asked to leave the premises and told that he was not permitted to contact the children or their mother, Angie. McCartney denied ever penetrating A.M.'s sexual organ, anus, or mouth with his penis. When asked if he believed A.M. had been sexually assaulted by somebody else, McCartney said, "I believe it's possible, yes."

*(1)    The Trial Court Did Not Err When It Admitted the SANE Report*

McCartney asserts that the trial court erred in overruling his hearsay objection to Brandi Wilson's SANE report.[10] "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." TEX. R. EVID. 801(d). Hearsay is not admissible except as provided by statute, the Texas Rules of

---

[8]According to McCartney, he wanted to report Jackson's alleged misconduct to law enforcement and take A.M. to the doctor to be examined, but Angie wanted him to "handle" the situation by physically fighting Jackson. McCartney stated, "She told me to -- that I needed to worry about [Jackson] and stop worrying about [A.M.]." McCartney said that Angie threatened to leave him, and take the children, if he did not follow through with her instructions to fight Jackson.

[9]McCartney and his family lived rent-free in a trailer on Jackson's property.

[10]"A trial judge's decision on the admissibility of evidence is reviewed under an abuse of discretion standard and will not be reversed if it is within the zone of reasonable disagreement." *Tillman v. State*, 354 S.W.3d 425, 434 (Tex. Crim. App. 2011) (citing *Davis v. State*, 329 S.W.3d 798, 813–14 (Tex. Crim. App. 2010)).

4

Evidence, or other rules prescribed pursuant to statutory authority. TEX. R. EVID. 802. In this case, the State sought to use Rule 803(4), an exception that allows for the admission of qualifying hearsay statements. *See* TEX. R. EVID. 803(4). The Rule provides,

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . . .
>
> (4)     Statements for Purposes of Medical Diagnosis or Treatment. Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

*Id*. "This exception is based on the assumption that the patient understands the importance of being truthful with the medical personnel involved to receive an accurate diagnosis and treatment." *Bautista v. State*, 189 S.W.3d 365, 368 (Tex. App.—Fort Worth 2006, pet. ref'd). McCartney contends that nothing suggests Wilson told A.M. that the purpose of the examination was diagnosis and treatment or explicitly impressed on A.M. her need to be honest during her physical examination. McCartney maintains that the trial court, therefore, abused its discretion when it admitted the complained-of evidence. We disagree.

An appellate court reviews the entire record to determine whether a child understands the importance of being truthful when being questioned by medical personnel. *Franklin v. State*, 459 S.W.3d 670, 677–78 (Tex. App.—Texarkana 2015, pet. ref'd). An express statement that the child understood the need to be truthful is not required. *Beheler v. State*, 3 S.W.3d 182, 188 (Tex. App.—Fort Worth 1999, pet. ref'd). Instead, "unlike statements made to non-medical professionals, which require affirmative evidence from the record on the issue of veracity, courts

5

can infer from the record that the victim knew it was important to tell a SANE the truth in order to obtain medical treatment or diagnosis." *Franklin*, 459 S.W.3d at 677.

At trial, Wilson testified that she took A.M.'s medical history and then gave A.M. the opportunity to explain what had occurred. Wilson stated that A.M. was the only person in the hospital examination room when she took her "sexual history." Wilson performed a physical examination of A.M., including a detailed pelvic and vaginal examination. Wilson explained that the purpose of taking a medical history was to evaluate A.M.'s health and her medical needs.[11]

Nothing in this record suggests that A.M. was unaware that Wilson's questions were intended to provide medical treatment or diagnosis or that she needed to be truthful in answering. *See Taylor v. State*, 268 S.W.3d 571, 589 (Tex. Crim. App. 2008). We find the record sufficient to support a finding that A.M. understood both the need to be truthful and the examination's purpose for medical treatment and diagnosis. The trial court did not abuse its discretion in admitting Wilson's testimony, as well as the statements attributed to A.M. contained in the SANE report.

We overrule this point of error.

*(2)*     *The Trial Court Did Not Err When It Admitted Photographs of A.M.'s Injuries*

McCartney also contends that the trial court abused its discretion by admitting what McCartney considered graphic photographs of A.M.'s injuries, in violation of Rule 403 of the Texas Rules of Evidence and the holding in *Reese v. State*, 33 S.W.3d 238 (Tex. Crim. App.

---

[11]Wilson explained, "[W]e ask about any present illnesses, any medications they're taking, drug allergies. And if they have any STI infection and any, like depression or emotional illnesses or any genital surgical procedures."

6

2000).[12]  He contends that the photographs' prejudicial value outweighs their probative value. Evidence, although relevant, may be excluded if its probative value is substantially outweighed by the danger of one of these five things:  unfair prejudice, confusion of the issues, a misled jury, undue delay, or the needless presentation of cumulative evidence.  TEX. R. EVID. 403.  Yet, Rule 403 favors the admission of relevant evidence and carries the presumption that evidence will be more probative than prejudicial.  *Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App. 2006). We review a trial court's decision under Rule 403 under an abuse-of-discretion standard, and we disturb the trial court's ruling only when the ruling falls outside the zone of reasonable disagreement.  *Jones*, 944 S.W.2d at 651.

In ruling under Rule 403, a trial court must "consider the inherent tendency that [the] evidence may have to encourage resolution of material issues on an inappropriate emotional basis." *Narvaiz v. State*, 840 S.W.2d 415, 429 (Tex. Crim. App. 1992).  Next, the trial court must balance that tendency, if any, against "the host of factors affecting probativeness, including [the] relative weight of the evidence and the degree to which its proponent might be disadvantaged without it." *Id*. (alteration in original)  A number of factors may be considered in determining whether the danger of unfair prejudice substantially outweighs the probative value of the photographs, including "the number of exhibits offered, their gruesomeness, their detail, their size, whether they are black and white or color, whether they are close-up, whether the body is naked or clothed [,

---

[12]*Reese* involved the admission, during the punishment phase, of a photograph depicting a murder victim's unborn child.  *Reese*, 33 S.W.3d at 239.  Specifically, Reese complained of an eight-by-ten, color photograph showing the murder victim in her casket with her unborn child, visible and wrapped in a blanket.  *Id*.  The Texas Court of Criminal Appeals determined that the erroneous admission of the photograph was harmful error necessitating a new punishment hearing.  *Id*. at 244.  Because the facts of *Reese* and the facts of this case are substantially dissimilar, we do not find *Reese* to be persuasive.

and] . . . the availability of other means of proof and the circumstances unique to each individual case." *Emery v. State*, 881 S.W.2d 702, 710 (Tex. Crim. App. 1994) (alteration in original) (quoting *Long v. State*, 823 S.W.2d 259, 272 (Tex. Crim. App. 1991)). In general, photographs are admissible where oral testimony about the same matters is admissible. *Ramirez v. State*, 815 S.W.2d 636, 647 (Tex. Crim. App. 1991).

McCartney complains specifically of a photograph of A.M.'s anus and one of her vagina that was taken with a colposcope.[13] Although a person could find both photographs, and the mode by which they were obtained, to be distasteful, neither of them were gruesome or particularly offensive,[14] nor were they intended to "shock or horrify the jury." *See Ashcraft*, 918 S.W.2d at 656. Instead, they had a clinical appearance and served a medical purpose since they helped explain and illustrate the SANE's findings. McCartney also emphasizes, "The State displayed the full-color photographs to the jury on an overhead projector." Yet, when we consider the nature of the trauma being investigated, along with the relatively small size of the areas subjected to the trauma, a legitimate reason existed to enlarge the photographs on the overhead projector and to present them to the jury in color, rather than black and white. Under these circumstances, the trial court's decision to overrule McCartney's Rule 403 objection and admit the complained-of

---

[13]*See Ashcraft v. State*, 918 S.W.2d 648, 656 (Tex. App.—Waco 1996, pet. ref'd) (holding that a photograph of the victim's vagina was not the type to shock or horrify the jury, had probative value, and had a benign tendency to present a danger of unfair prejudice).

[14]*See Wyatt v. State*, 23 S.W.3d 18, 29–30 (Tex. Crim. App. 2000) (holding that two autopsy photographs showing blood at the opening of the victim's anus were not particularly offensive and did no more than portray the nature of the injuries inflicted).

8

photographs fell within the zone of reasonable disagreement and, thus, did not constitute an abuse of discretion. *See Jones*, 944 S.W.2d at 651.

We overrule this point of error.

*(3)*     *Any Error Regarding the Proper Outcry Witness' Statement Was Harmless*

McCartney also contends that the trial court abused its discretion when it admitted the testimony of the CAC interviewer, Melanie Halbrook, as an outcry witness. According to McCartney, Halbrook's testimony was inadmissible hearsay.

In cases involving certain sex crimes against children, a statutory exception to the hearsay rule exists for testimony by outcry witnesses when specific requirements are met. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072 (Supp.). An outcry witness is defined as the first person eighteen years of age or older, other than the defendant, to whom the child victim makes a specific type of statement about the offense. TEX. CODE. CRIM. PROC. ANN. art. 38.072, § 2(a)(3). The outcry must in some discernible manner describe the alleged offense, and it must be more than just words generally suggesting that some sort of child abuse occurred. *Garcia v. State*, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990); *Broderick v. State*, 35 S.W.3d 67, 73 (Tex. App.—Texarkana 2000, pet. ref'd). If the outcry testimony is contested by the defense, the trial court must hold a hearing outside the presence of the jury to determine "'based on the time, content, and circumstances of the statement' whether the victim's out-of-court statement is 'reliable'" *Sanchez v. State*, 354 S.W.3d 476, 484–85 (Tex. Crim. App. 2011) (quoting TEX. CODE CRIM PROC. ANN. art. 38.072, § 2(b)(2)). The victim must either testify or be available to testify at that hearing. *Id.* at 485.

9

"[A]n outcry witness is not person-specific, but event-specific." *Broderick*, 35 S.W.3d at 73; *see Josey v. State*, 97 S.W.3d 687, 692 (Tex. App.—Texarkana 2003, no pet.) (mother was proper outcry witness for act of oral contact, but forensic interviewer was proper outcry witness for act of digital penetration); *Lopez. v. State*, 343 S.W.3d 137, 140 (Tex. Crim App. 2011). Multiple outcry witnesses are permissible in any case, but only one outcry witness per event. *Lopez*, 343 S.W.3d at 140.

McCartney complains that, contrary to the State's pretrial notice and its position at trial, Halbrook was not the first adult to whom A.M. made a statement about the alleged offenses. During a pretrial hearing, McCartney challenged the State's designation of Halbrook as the proper outcry witness. During the hearing, Halbrook testified that she interviewed A.M. August 5, 2016.

> When she described the oral sex, she referred to his penis as a turtle and described him -- that he would spit on his fingers and rub it on his turtle and that white stuff would come out, and she would have to drink it all of the time.
> Then when she disclosed anal penetration, she talked about him bending her over on the coach [sic] and putting his turtle in her butt, and it would make her butt bleed.
>
> And then she disclosed vaginal penetration. She referred to her vagina as her tutu and disclosed it hurting when he would put his turtle in her tutu.

In relation to oral penetration by McCartney, Halbrook stated, "A.M. said that his turtle tasted [and smelled] like cigarettes." According to Halbrook, A.M. described McCartney's behavior by "talking about his body moving, and she demonstrated on camera her hips moving back and forth." A.M. told Halbrook that the offenses occurred when she was five and six years old and that the assaults happened either in the living room or in A.M.'s mother's room. A.M. also described that, during one of the assaults, she had been wearing a Mickey Mouse sleep shirt and orange

10

underwear. When Halbrook was asked when she believed the assaults occurred, she responded, "We went over what I believe was the most recent incident. And it wasn't so much location, but more of the type of acts she was disclosing, going over one of those incidents for each type of act that she disclosed." Halbrook stated that, as far as she was aware, she was the first adult that A.M. spoke to about oral, vaginal, and anal penetration by McCartney.

On appeal, McCartney contends that the SANE, Wilson, was the proper outcry witness.[15] At trial, Wilson testified that, during A.M.'s interview and examination on August 2 and 3, 2016,[16] A.M. reported to her the following information, which Wilson recorded in writing:

> "[McCartney] hurt me with his turtle." Points to male diagram penis, which she has labeled "turtle."

> "He stuck it in my butt. He did it today while mommy was gone. It happened in the living room while [C.C.] and [B.C.] were sleeping behind the gate. I told mommy he would hurt her. A long time ago he stuck it in my tutu." Points to vagina on the girl's diagram that she labeled "tutu."

> "He hurt me. He made me put his turtle in my mouth. He made me suck his turtle. He made me kneel down on the couch so he could stick his private turtle in my butt. He'll hurt me if I tell him what to do, and I cry.["]

> "He put spit on it -- he put spit on his turtle. He stuck his finger in my privates. Sometimes he licks it. He didn't stick it in my tutu today because I have a rash. If I bleed on my butt, daddy tells me never to tell anybody I bleed on my butt. My butt hurts when I poo-poo. I had Mickey Mouse pajamas and my orange underwear."[17]

---

[15]During the first hearing, McCartney argued that A.M. made an outcry to her paternal grandmother and to Thomas before speaking to Halbrook about the allegations. However, when he renewed his objection to the State's designation of Halbrook as the outcry witness, he argued that Wilson was the proper outcry witness. In both instances, the trial court overruled McCartney's objections to the State's designation of Halbrook as the outcry witness.

[16]A.M. checked into the hospital on August 2, but Wilson did not examine and interview her until the early morning hours of August 3.

[17]Wilson went on to explain that pieces of A.M.'s hymen were missing and that it was not normal in girls A.M.'s age. She explained that such a finding "would be suggestive of vaginal penetration." She stated that A.M. had some redness

On cross-examination, Wilson also testified that she was over eighteen years old.

Even assuming that the admission of Halbrook's testimony as the outcry witness was error as McCartney contends, we conclude that it was harmless. The erroneous admission of hearsay testimony under Article 38.072 of the Texas Code of Criminal Procedure is nonconstitutional error. *Nino v. State*, 223 S.W.3d 749, 754 (Tex. App.—Houston [14th Dist.] 2007, no pet.). If an appellate court is reasonably assured that the error did not influence the verdict or had but a slight effect, such error is harmless. *Id.* In a case such as this one, when the same or similar evidence is admitted without objection at another point in the trial, the error is considered harmless. *Id.* (citing *Mayes v. State*, 816 S.W.2d 79, 88 (Tex. Crim. App. 1991). Here, the same or similar evidence was legitimately admitted at least twice. A.M. testified that McCartney had penetrated her mouth, her vagina, and her anus with his penis when she was five and six years of age, and A.M.'s testimony, even if it were to have stood alone, is among the strongest child-victim testimony we have seen. We have also held admissible Wilson's testimony recounting A.M.'s detailed statements in the SANE interview. We can have little doubt that the jury would have found as it did, even without Halbrook's testimony. Any error was harmless.

We overrule this point of error.

---

around her vagina and that her buttocks and rectum "had some injuries." Those findings, however, were inconclusive, "meaning that you can't state what the injury is caused from." But Wilson stated, "My findings were consistent with the history that she gave me during the exam."

*(4)     The Trial Court's Jury Charge Did Not Contain Error*

According to McCartney, the trial court erred when it failed to include in its jury charge an instruction requiring jury unanimity as to a specific act of criminal conduct.[18] It is well settled that "[a] trial court must submit a charge setting forth the 'law applicable to the case.'" *Lee v. State*, 415 S.W.3d 915, 917 (Tex. App.—Texarkana 2013, pet. ref'd) (quoting TEX. CODE CRIM. PROC. ANN. art. 36.14). "The purpose of the jury charge . . . is to inform the jury of the applicable law and guide them in its application. It is not the function of the charge merely to avoid misleading or confusing the jury: it is the function of the charge to lead and prevent confusion." *Id*. (quoting *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007)). Moreover, "the jury is the exclusive judge of the facts, but it is bound to receive the law from the court and be governed thereby." TEX. CODE CRIM. PROC. ANN. art. 36.13.

"Texas law requires that a jury reach a unanimous verdict about the specific crime that the defendant committed." *Cosio v. State*, 353 S.W.3d 766, 771 (Tex. Crim. App. 2011). "This means that the jury must 'agree on a single and discrete incident that would constitute the commission of the offense alleged.'" *Id*. (quoting *Stuhler v. State*, 218 S.W.3d 706, 717 (Tex. Crim. App. 2007)).

---

[18]Our review of an alleged jury charge error involves a two-step process. *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). Initially, we determine whether error occurred and then "determine whether sufficient harm resulted from the error to require reversal." *Id*. at 731–32; *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). The level of harm that must be shown as having resulted from the erroneous jury instruction depends on whether the appellant properly objected to the error. *Abdnor*, 871 S.W.2d at 732.

When a proper objection is made at trial, a reversal is required if there is "some harm" "calculated to injure the rights of defendant." *Id*. But, when the defendant fails to object to the charge, we will not reverse the jury-charge error unless the record shows "egregious harm" to the defendant. *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005) (citing *Almanza*, 686 S.W.2d at 171). In determining whether the error caused egregious harm, we must decide whether the error created such harm that the appellant did not have a "fair and impartial trial." TEX. CODE CRIM. PROC. ANN. art. 36.19; *Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008); *Almanza*, 686 S.W.2d at 171; *Boones v. State*, 170 S.W.3d 653, 660 (Tex. App.—Texarkana 2005, no pet.). "Neither the State nor the defendant has a burden to prove harm." *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013).

Though not the circumstance in this case, "non-unanimity may occur when the State charges one offense and presents evidence that the defendant committed the charged offense on multiple but separate occasions." *Id*. at 772. When "[e]ach of the multiple incidents individually establishes a different offense or unit of prosecution, . . . [t]he judge's charge, to ensure unanimity, would need to instruct the jury that its verdict must be unanimous as to a single offense or unit of prosecution among those presented." *Id*.

In this case, McCartney was charged in one indictment with five separate counts of aggravated sexual assault of a child,[19] and the State's evidence included one instance of aggravated sexual assault to support each of the five counts for which McCartney was convicted.[20] Therefore, the trial court was required to instruct the jury that it had to be unanimous as to each single unit of prosecution. *See Arrington v. State*, 451 S.W.3d 834, 839 (Tex. Crim. App. 2015). In its charge, the trial court included, under five separate headings, each of the five specific counts, which included what the State was required to prove beyond a reasonable doubt for the jury to return a verdict of guilty. For instance, the trial court's jury instruction regarding count I of the State's indictment read,

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 2nd day of August, 2016, in Harrison County, Texas, the defendant, Christopher McCartney, did, then and there intentionally or knowingly cause the penetration of

---

[19]In counts I and III, McCartney was charged with intentionally or knowingly causing the penetration of A.M.'s vagina with his penis. In counts II and IV, McCartney was charged with intentionally or knowingly causing the penetration of A.M.'s anus with his penis. Count V alleged that McCartney intentionally or knowingly caused the penetration of A.M.'s mouth with his penis. All of the counts were alleged to have occurred "on or about the 2nd day of August, 2016."

[20]The State presented evidence that McCartney sexually assaulted A.M. by inserting his penis in (1) her vagina, (2) her anus, and (3) her mouth. A.M. testified, and also told the CAC interviewer, that she was five and six years of age when the assaults occurred. McCartney does not complain that the evidence was insufficient to support the jury's guilty verdicts, only that the trial court's instructions were erroneous.

the sexual organ of A.M. a child who was then and there younger than 14 years of age, by defendant's sexual organ then you will find [McCartney] guilty of aggravated sexual assault as charged in the indictment.

*Unless you so find from the evidence beyond a reasonable doubt*, *or if you have a reasonable doubt thereof*, *you will acquit the defendant and say by your verdict "Not Guilty."*

(Emphasis added) The remaining four counts were presented in the same manner, and all of them included the instruction that, "[u]nless you so find from the evidence beyond a reasonable doubt, or if you have reasonable doubt thereof, you will acquit [McCartney] and say by your verdict 'Not Guilty.'" The instructions also stated, "You may return a verdict [of guilty or not guilty] only if all twelve of you agree on this verdict." Thus, there would have been no question in the jurors' minds that they were required to agree on a "single and discrete incident that would constitute the commission" of each of the five alleged offenses.[21] *Cosio*, 353 S.W.3d at 771 (quoting *Stuhler v. State*, 218 S.W.3d 706, 717 (Tex. Crim. App. 2007)). We find no error in the trial court's instruction.

We overrule this point of error.

*(5)    McCartney Did Not Preserve His Complaints Regarding Jury Argument*

Finally, McCartney contends that the State made improper arguments to the jury during its closing statement. Permissible jury argument falls into one of four areas: (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) an answer to the argument of opposing counsel, or (4) a plea for law enforcement. *Cannady v. State*, 11 S.W.3d 205, 213 (Tex. Crim. App. 2000). Even when an argument exceeds the permissible bounds of these approved areas, it

---

[21]Moreover, the verdict form listed each of the five counts separately and contained a space below each count to indicate whether the jury found McCartney guilty or not guilty of that particular count.

15

will not be reversible unless the argument is extreme or manifestly improper, violates a mandatory statute, or injects into the trial new facts harmful to the accused.[22] *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000) (citing *Todd v. State*, 598 S.W.2d 286, 296–97 (Tex. Crim. App. 1980)). The prosecutor's remarks must have been a willful and calculated effort to deprive a defendant of a fair and impartial trial. *Id.* (citing *Cantu v. State*, 939 S.W.2d 627, 633 (Tex. Crim. App. 1997)). An attorney is afforded wide latitude in argument as long as it is supported by evidence and in good faith. *Stewart v. State*, 995 S.W.2d 187, 190 (Tex. App.—Fort Worth 1999, pet. ref'd). In most instances, the court's instruction to disregard the remarks will cure the error. *Wilkerson v. State*, 881 S.W.2d 321, 327 (Tex. Crim. App. 1994).

McCartney points to two parts of the State's argument. First, he complains of the following argument: "So today you either believe what that little girl said, and think you find justice, but its you 12, you can disbelieve that little girl and find him not guilty. But if you disbelieve that little girl, then . . . you've done to her what [McCartney] did to her." McCartney contends that the State's comment did not fall within the permissible scope of proper argument, stating, "It was not a response to any argument from defense counsel, and it was not a permissible plea for law enforcement. Rather, the argument stated that a jury willing to acquit does violence to A.M."

---

[22]In general, improper jury argument is considered to be a nonconstitutional error. *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998). Nonconstitutional error that does not affect the substantial rights of an accused must be disregarded. TEX. R. APP. P. 44.2(b). When determining whether improper jury argument affects an accused's substantial rights, courts examine the following three factors: (1) the severity of the conduct, (2) the measures taken to cure the misconduct, and (3) the certainty of the conviction absent the misconduct. *Mosley*, 983 S.W.2d at 259. If the record as a whole reflects a "fair assurance that the error did not influence the jury, or had but a slight effect," the conviction must not be reversed. *Id*. at 260.

16

At trial, when the State made the complained-of argument, McCartney objected, stating it was "improper jury argument that they are somehow doing violence to this victim if they follow the law." The trial court responded, "The jury is instructed to follow the law, and you will follow the law." Here, the State does not argue the propriety of the statement; instead, it argues that McCartney forfeited any error because he failed to seek an adverse ruling on his objection. We agree.

Before a defendant will be permitted to complain on appeal about an erroneous jury argument or that an instruction to disregard could not have cured the erroneous argument, there must have been both an objection to the argument and an adverse ruling. *Campos v. State*, 946 S.W.2d 414, 417 (Tex. App.—Houston [14th Dist.] 1997, pet. ref'd). Here, McCartney failed to pursue his objection to the point of receiving an adverse ruling. Thus, he is unable to seek review of that argument on appeal.

McCartney also complains of the following argument: "[F]irst off, children don't lie about these things, and everyone that's testified, in their experience, children don't lie about these type of things. Yes, they might lie if they stole the last cookie, if they didn't brush their teeth. They're not going to lie about stuff like this." However, McCartney did not object to this argument at the time it was made. Because McCartney failed to object to this argument, he has forfeited the issue for our review. *See* TEX. R. APP. P. 33.1(a).

We overrule this point of error.

17

We affirm the trial court's judgment.


                                        Josh R. Morriss, III
                                        Chief Justice

Date Submitted:     November 4, 2019
Date Decided:       December 6, 2019

Do Not Publish